IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TANELLE M. JEFFERSON, | ) | CASE NO. 3:18-cv-00779 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| STATE OF OHIO, | ) | |
| | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | ) | |

Petitioner Tanelle M. Jefferson ("Petitioner" or "Jefferson"), proceeding pro se, filed this

habeas corpus action pursuant to 28 U.S.C. § 2254.  His petition is deemed filed on March 18,

2018, the date he placed it in the prison mailing system.[1]  Doc. 1, p. 15.  Thereafter, Jefferson

sought and was granted leave to file an amended petition.  Docs. 6 & 18.  Jefferson filed an

amended petition on November 26, 2018 (hereinafter referred to as "Petition").  Doc. 22.

Jefferson challenges the constitutionality of his convictions and sentences in *State of Ohio v.*

*Jefferson*, Case No. G4801-CR-0201601280 (Lucas County).   Docs. 1 & 22.

In July 2016, following a jury trial, Jefferson was found guilty of one count of felonious

assault with a firearm specification and one count of having weapons while under disability.

Doc. 28-1, pp. 20, 66-67.  The trial court sentenced Jefferson to a total of 12.5 years in prison.

Doc. 28-1, pp. 20, 66-67.

---

[1] "Under the mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials
for filing in the federal courts." *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir. 2002) (citing *Houston v. Lack,* 487 U.S.
266, 273 (1988)).  Jefferson's petition was docketed in this Court on April 6, 2018.  Doc. 1.

This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the Court **DISMISS and/or DENY** Jefferson's Petition.

## I.  Pending Motions

Also pending before the Court are the following motions filed by Petitioner: (1) Motion for Appointment of Counsel (Doc. 16); (2) Motion for Discovery (Doc. 17); (3) Motion to Expand the Records (Doc. 24); (4) Motion to Subpoena Toledo Police Report (Doc. 25); and (5) Motion to Expand Records (Doc. 31).   Petitioner's pending motions are resolved as follows:[2]

### A.  Petitioner's Motion for Appointment of Counsel (Doc. 16)

It is well established that a habeas corpus proceeding is civil in nature and the Sixth Amendment right to counsel afforded for criminal proceedings does not apply.  *See, e.g., Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)); *Douglas v. Maxwell*, 357 F.2d 320, 321 (6th Cir. 1966); (there is no Sixth Amendment right to appointed counsel in habeas cases since a habeas corpus proceeding is not a criminal proceeding).  The Rules Governing § 2254 Cases ("Habeas Rules") provide situations when a federal habeas court must appoint counsel but do not otherwise set a standard for when the court may appoint counsel.  *See, e.g.,* Rule 8 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254 (counsel must be appointed if evidentiary hearing is warranted).

When not required by rule, the appointment of counsel for federal habeas petitioners who, like Petitioner, have filed pursuant to § 2254, is governed by the Criminal Justice Act, 18

---

[2] Some of Petitioner's motions pertain to similar matters and therefore are addressed together.

U.S.C. § 3006A.  *See* 28 U.S.C. § 2254(h).  Pursuant to 18 U.S.C. § 3006A, the decision to appoint counsel for a federal habeas petitioner is within the court's discretion, and representation may be provided when "the interests of justice so require."  18 U.S.C. § 3006A(a)(2); *Mira v. Marshall,* 806 F.2d 636, 638 (6th Cir. 1986) ("The decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require.").  "Appointment of counsel is only justified in 'exceptional circumstances,' and is unnecessary where claims are 'relatively straightforward' and arise under settled law."  *U.S. v. Pullen*, 2012 WL 116035, * 1 (N.D. Ohio Jan. 13, 2012) (denying motion for appointment of counsel in habeas proceeding filed pursuant to 28 U.S.C. § 2255) (citing *Gilbert v. Barnhart*, 2009 WL 4018271, *1 (E.D. Mich. Nov. 19, 2009) (§ 2254 proceeding) and *Bookstore v. Addison*, 2002 WL 31538688, at *2 (10th Cir. Nov. 6, 2002) (§ 2254 proceeding)).

Petitioner contends that appointment of counsel is warranted because he "lack(s) the professional skills and knowledge of law and legal procedure."  Doc. 16, p. 1.  However, he has filed multiple motions on his own behalf and sought and received leave to file an amended petition.  Petitioner has failed to show that exceptional circumstances exist warranting the appointment of counsel.  Accordingly, Jefferson's motion for appointment of counsel (Doc. 16) is **DENIED**.

### B.      Petitioner's Motion for Discovery (Doc. 17) and Petitioner's Motion to Subpoena Toledo Police Report (Doc. 25)

In Doc. 17, Jefferson generally requests that he be provided with "all the evidence in this case."  Doc. 17, p. 1.  In his reply brief, Jefferson states he never received a DVD of an interrogation conducted of him by Detective Sherri Wise.  Doc. 23, p. 1.

In Doc. 25, Jefferson seeks a Toledo Police Report from on or about December 2, 2015, asserting that he called the Toledo Police non-emergency line asking for help because Jeanette

Ervin[3] was attempting to attack him with objects and he was in an air-cast and unable to get away from her.  Doc. 25, p. 2.  Jefferson further states that the report shows:

> Jeanette Ervin was the violent person and shows Jefferson was the victim who was physically impaired and needed help from her.  On February 3, 2016, Jefferson was injured more than he was on December 2, 2015, because he had two badly injured hands and this broken leg as well.  These injuries made it impossible for Jefferson to fight anyone or defend his self from anyone with his physical impairments plus his Epilepsy.

Doc. 25, p. 2.

In state post-judgment proceedings, Jefferson sought this same record but his request was denied.  Doc. 25, p. 1, Doc. 28-1, pp. 151, 178.

Under Rule 6 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254, "[a] judge *may*, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  (emphasis supplied).  However, Jefferson has not shown good cause to authorize discovery in this habeas case.   Additionally, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Moore v. Mitchell*, 708 F.3d 760, 781 (6th Cir. 2013) (quoting *Cullen v. Pinholster*, — U.S. —, 131 S.Ct. 1388, 1398 (2011)).  A federal habeas petition is not intended to allow for a "retrial" of a state proceeding.  *Moore*, 708 F.3d at 781.

For the reasons discussed herein, Jefferson's motions for discovery (Docs. 17 & 25) are **DENIED**.

### C.    Petitioner's Motion to Expand the Records (Docs. 24 & 31)

#### 1.    Doc. 24

---

[3] Jeanette Ervin, Jefferson's wife, was the victim in the criminal case underlying this federal habeas proceeding.  Doc. 28-1, pp. 67-71, ¶¶ 4-11.

In Doc. 24, Jefferson seeks to have included in the record before this Court state court records or partial or incomplete copies of state court records.  Doc. 24-1 (portion of court docket); Doc. 24-2 (October 31, 2018, trial court order denying pro se motion for summary judgment and motion to subpoena witnesses); Doc. 24-3 (portions of State's opposition to Defendant's (1) Motion for Summary Judgment; and (2) Motion to Subpoena Witnesses).

When Respondent filed its Return of Writ on January 11, 2019, Respondent filed the state court record as an exhibit thereto.  Doc. 28-1.  Included in that record is a copy of the October 31, 2018, trial court order denying Jefferson's motion for summary judgment and motion to subpoena witnesses (Doc. 28-1, p. 266) and a complete copy of the State's opposition to Defendant's (1) Motion for Summary Judgment; and (2) Motion to Subpoena Witnesses (Doc. 28-1, pp. 263-265).  Additionally, Respondent has filed copies of various state court dockets pertaining to Jefferson's state court proceedings.  Doc. 28-1, pp. 268-282, 283-288, 289, 290.

Considering the foregoing, Jefferson's Motion to Expand the Records (Doc. 24) is moot and is **DENIED**.

### 2. Doc. 31

In Doc. 31, Jefferson seeks to expand the record to include "evidence that is within Case No. CR16-1280 records that court appointed Daniel Arnold recently sent Jefferson on or around March 21, 2019."  Doc. 31, p. 1.  The records include a letter from Attorney Arnold to Jefferson, records from the Toledo Municipal Court, an incident detail report, a record of a property search, and purported attorney notes.  Doc. 31, Doc. 31-1, pp. 1-17.  Jefferson asserts that these various records will prove certain matters.  Doc. 31.  For example, he asserts that the records prove that Detective Sherri Wise was aware of certain matters; that he and his wife Jeanette Ervin did not really know each other; and that there was no evidence introduced to prove Jeanette Ervin's

claim that that Jefferson was intoxicated on February 3, 2016.  Doc. 31, pp. 1-2.  In essence, Jefferson is arguing that the records could be used as impeachment evidence.

Expansion of the record in a habeas proceeding is discretionary.  *See* Rule 7 of the Rules Governing § 2254 Cases, 28 U.S.C.A. foll. § 2254 (". . . the judge *may* direct the parties to expand the record . . .) (emphasis supplied).  There is no indication that the various records that Jefferson seeks to have included in the record before this Court were presented to the state court or that Jefferson sought to have the records considered by the state court.  And, as noted above, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Moore*, 708 F.3d at 781.  Further, Jefferson has failed to demonstrate that the records he seeks to introduce could establish a basis upon which federal habeas relief is warranted.  For the foregoing reasons, Jefferson's Motion to Expand the Records (Doc. 31) is **DENIED**.

## II.    Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual determinations are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *Id.*; *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008) *cert. denied,* 129 S. Ct. 2878 (2009).  The Sixth District Ohio Court of Appeals summarized the facts underlying Jefferson's convictions as follows:

> {¶ 2} On February 12, 2016, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree. Based upon the allegation that appellant committed the felonious assault while in possession of a firearm, a firearm specification was attached to the felonious assault under R.C. 2941.145.

6

{¶ 3} Thereafter, appellant entered pleas of not guilty to the aforementioned charges, and the matter proceeded to discovery. Following pretrial proceedings and motion practice, a two-day jury trial commenced on July 18, 2016.

{¶ 4} At trial, the state first presented the testimony of appellant's wife, Jeanette Ervin. Ervin and appellant were married in December 2015. According to Ervin, the marriage "started out fun," but eventually became abusive. Specifically, Ervin stated: "Well, after being together for a while, I noticed some changes in [appellant]. He would always grab on my clothes, rough me up, and he had that temper about [himself] and I would have to fight him off." Due to the abuse that was existent within their marriage, appellant and Ervin resided separately.

{¶ 5} Three months into the marriage, Ervin decided that it was time to end her relationship with appellant. After Ervin informed appellant of her decision to end the marriage, appellant asked Ervin to come to his house so that they could talk about possibly staying together. Ervin noticed that appellant was drinking from a bottle of Hennessy brandy when she arrived at his house. During the discussion, Ervin also noticed a handgun sitting on a nearby table.

{¶ 6} When Ervin informed appellant that she was leaving him, he told her that she was not going anywhere. Ervin then attempted to exit appellant's home. At trial, Ervin recounted the ensuing incident as follows:

And as I'm trying to get out the door, the front door, he's blocking me. So I break and run through the dining room to the kitchen to go down these steps to get away from him. And he put his foot on the back door and said, you're not going anywhere.

All of a sudden he [started] screaming and hollering and I'm just begging him, please. I called him Tee Jay. Tee Jay, let me go. I want to go home, leave me alone. I don't want to be here with you anymore. Let me go.

He kept saying, no, screaming and hollering, still got ahold of my clothes, to my clothes. I go back up the steps to the kitchen and the voice that came out of him was something like I've never heard before, like demons. He was just screaming and hollering at me.

And I knew at that point something bad is getting ready to happen because I already knew he had that gun.

So I tried to keep quiet and not say anything and I'm—he got me backed up there against this thing and I'm like Tee Jay, let me go; I want to go home.

So I managed—he kept telling me I wasn't going to go. I managed to get around him, go through the dining room. He's going to grab me again. Still got my clothes.

By that time this weapon, this gun, hits the floor. I say, it's time for me to break and run for my life.

I ran out that door so fast. I was trembling. I was scared to death. I feared for my life.

As I'm running out the door going down the steps I hear a pow. I'm like, oh, my God, he done shot at me, am I shot? I run around to my car. I'm shaking. I'm trembling. I'm falling down to my knees. The [key is] dropping out of my hand. I'm trying to get in my car to get away and I look through my car window to see where he was at after he shot at me. He's standing on this porch like it's nothing. He [turns] around and he walks back in the house.

{¶ 7} Upon further questioning, Ervin acknowledged that she did not actually witness appellant shoot at her because she was running away from him at the time. Nonetheless, appellant was insistent that she heard appellant fire a shot from where he was standing on the front porch of his home. When asked how she could be certain that appellant fired a shot at her, Ervin stated: "Because I heard the pow and I knew he had a gun. And he was angry."

{¶ 8} As its next witness, the state called Brian Heath. Heath and his partner, Scott Bruhn (whom the state called as its third witness), were the first officers to arrive on the scene after Ervin called 911. Initially, Heath set up a perimeter around appellant's house. Meanwhile, Bruhn questioned Ervin, who informed him that appellant had just shot at her and was still inside the home. Eventually, Heath and Bruhn took appellant into custody. Upon further questioning, Ervin explained to Bruhn that appellant had shot at her from the front porch of the home.

{¶ 9} After learning that appellant fired a shot at Ervin from his front porch, Bruhn alerted the detective bureau and began searching the area around the porch for a shell casing. Bruhn was accompanied by another officer, Michael Watson. Ultimately, Watson discovered one Hornady .25 ACP caliber spent shell casing on top of the grass five to six feet from the edge of the front porch. According to Watson, the location of the shell casing was consistent with Ervin's contention that appellant fired at her while standing on the front porch.

{¶ 10} For its fourth witness, the state called Nathaniel Sahdala. Sahdala also responded to the scene after Ervin called 911. After appellant was arrested and taken into custody, Sahdala entered appellant's home. Upon entry, Sahdala entered the dining room, where he observed a portion of carpet that was folded over with the rear half of a handgun visible underneath the carpet. Sahdala then rolled back the rest of the carpet that was folded and discovered two additional firearms, both of which were loaded. Thereafter, Sahdala retrieved the firearms and unloaded the ammunition. One of the firearms was a .25 caliber handgun, which contained Hornady .25 ACP ammunition matching the shell casing that Watson discovered next to the front porch.

{¶ 11} As its final witness, the state called detective Sherri Wise. Wise arrived at appellant's residence and was involved in the removal of the firearms from the dining room. Wise eventually interviewed appellant at the police station, where appellant admitted to having fired a weapon earlier in the day. Initially, appellant insisted that he shot a possum. However, the type of animal that was allegedly shot changed several times during the course of Wise's interrogation of appellant. Further, appellant claimed that he shot the animal with a Winchester rifle, which was not located at the residence. Ultimately, the three handguns that were removed from the residence were tested and found to be operable. Notably, Wise corroborated the previous testimony that the .25 caliber handgun that was removed contained ammunition matching the spent shell casing found on the lawn adjacent to the front porch.

*State v. Jefferson*, 2017-Ohio-7272, ¶¶ 2-11, 2017 WL 3575607, ** 1-3 (Ohio Ct. App. Aug. 18, 2017); *see also* Doc. 28-1, pp. 67-71 (alterations in original).

### III.    Procedural Background

#### A.  State conviction

On February 12, 2016, a Lucas County Grand Jury indicted Jefferson on (1) one count of felonious assault in violation of O.R.C. § 2903.11(A)(2) and (D), a felony of the second degree, with a firearm specification attached; and (2) one count of having weapons while under disability in violation of O.R.C. § 2923.13(A)(3), a felony of the third degree.  Doc. 28-1, pp. 4-6, 67.  At his arraignment, which was held on February 24, 2016, Jefferson entered a plea of not guilty.  Doc. 28-1, p. 7.

Jefferson filed a motion to suppress, arguing statements he made should be suppressed because he was not advised of his right to remain silent prior to being questioned.  Doc. 28-1, pp. 8-9.  The State filed an opposition.  Doc. 28-1, pp. 10-15.  The trial court held a hearing on the motion to suppress on May 13, 2016.  Doc. 28-1, p. 16.  At that hearing, at the joint request of the parties, a DVD of questioning by the police was submitted to the court for its review.  Doc. 28-1, pp. 16, 17.  Also, at the hearing, Jefferson requested that new counsel be appointed.  *Id.*

On May 17, 2016, the court denied the motion to suppress and Jefferson's motion for new counsel.[4]  Doc. 28-1, pp. 17-18.  The case was set for pre-trial on June 17, 2016.  Doc. 28-1, p. 18.  On June 17, 2016, counsel for Jefferson withdrew and the pre-trial was rescheduled to June 22, 2016.  Doc. 28-1, pp. 271-272.  New counsel was present at the June 22, 2016, pre-trial.  Doc. 28-1, p. 272.

Jury trial commenced on July 18, 2016.  Doc. 28-1, p. 273.  Following a jury trial, on July 19, 2016, a jury found Jefferson guilty of felonious assault with firearm specification and having weapons while under disability.  Doc. 28-1, pp. 20-21, 273-274.  The trial court proceeded to sentence Jefferson to serve 7 years on count 1 and 30 months on count 2 and an additional mandatory and consecutive term of 3 years for the firearm specification for a total prison sentece of 12.5 years.  Doc. 28-1, pp. 20-21, 71-72.

### B.  Direct appeal

On August 18, 2016, Jefferson, through new counsel, appealed to the Sixth District Court of Appeals.  Doc. 28-1, pp. 22-24.  In his appellate brief filed on January 28, 2017, (Doc. 28-1, pp. 25-43), Jefferson raised the following assignments of error:

1.    The trial court erred to the prejudice of appellant by denying his Rule 29 motion upon completion of the State's case in chief.

2.    Appellant's conviction was against the manifest weight of the evidence produced at trial.

Doc. 28-1, pp. 26, 33-37, 38-39.  The State filed its appellate brief on February 7, 2017.  Doc. 28-1, pp. 44-65.  On August 18, 2017, the Sixth District Court of Appeals affirmed the judgment of the Lucas County Court of Common Pleas.  Doc. 28-1, pp. 66-77.

---

[4] The court, noting Jefferson's statement that he had previously been shot in the head and his demeanor on the DVD and in court, ordered Jefferson to undergo a pretrial general psychological examination.  Doc. 28-1, pp. 17-18.  In his amended petition, Jefferson states that no psychological examination was conducted.  Doc. 22, p. 7.

On October 2, 2017, Jefferson, pro se, filed a notice of appeal with the Supreme Court of Ohio.  Doc. 28-1, pp. 78-79.  In his memorandum in support of jurisdiction (Doc. 28-1, pp. 80-104), Jefferson presented the following propositions of law:

    1.      Due Process of Law.

    2.      Ineffective Assistance of Counsel.

Doc. 28-1, pp. 85-88.  On January 31, 2018, the Supreme Court of Ohio declined to accept jurisdiction of Jefferson's appeal.  Doc. 28-1, p. 105.

### C.  Application to reopen direct appeal pursuant to Ohio App. R. 26(B)

While his direct appeal was pending, on December 1, 2017, Jefferson filed with the Sixth District Court of Appeals an application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  Doc. 28-1, pp. 106-118.  Jefferson argued that his appellate counsel was ineffective for not raising ineffective assistance of trial counsel and violation of due process of law.  Doc. 28-1, p. 118.  On January 11, 2018, the Sixth District Court of Appeals issued a decision and judgment denying Jefferson's application for reopening.  Doc. 28-1, pp. 119-121.  The court of appeals found that Jefferson's application was untimely and that Jefferson had not demonstrated good cause for the untimely filing.  Doc. 28-1, p. 120.  Jefferson did not appeal from the court of appeals' denial of his application to reopen.

### D.  Petition to vacate or set aside judgment of conviction or sentence

Also, while his direct appeal was pending, on October 4, 2017, Jefferson filed in the trial court a Petition to Vacate or Set Aside Judgment of Conviction or Sentence.  Doc. 28-1, pp. 122-127.  Jefferson raised the following two claims in his petition:

1.     Statement of constitutional claim:

Fifth and Fourteen Amendments, U.S. Constitution; Section 16, Article 1, Ohio Constitution Due Process right was violated my trial and prosecution. Trial – Transcripts of Proceeding (TP) Vol 1/2.

Short statement of facts supporting the claim:

A prosecutor is required to prove every element of the crime with which a defendant is charged beyond a reasonable doubt.  The Winship "Beyond a reasonable doubt." Sullivan v. La, 508 U.S. 275, 278 (1993).  Count 1 Felonious assault with a gun specification means a person knowingly attempt to or did cause harm to a person.  There is no physical proof or evidence that indicated I could harm or actually harm Jeanette Ervin on the night of February 3rd, 2016 besides her testimony, in which she testified I roughed her up 2 months before her surgery in May, 2016 (TP Vol 1/2 p173) and Lucas County Correctional's records have actual fact that was impossible for me to do because I was in custody.  Its unconstitutional for a prosecutor to make presumptions in criminal prosecution.  Estelle v. McGuire, 502 U.S. 62, 72 (1991) Sandstrom v. Mont., 442 U.S. 510, 514 (1979).  State witness, expert of the law, Toledo police officer Mr. Brian Heath stated (TP Vol. 1/2 p212 line 3-5) "Initially there was nobody outside. If I can recall correctly, the victim-caller was in her car and come to the location once we arrived." This fact that supports my story she wasn't there at 2055 Elliott at the time she call 9-1-1 meaning her accusations is false also and it was proven in court I didn't reside or have ownership to 2055 Elliott Ave another violation, Miranda v. Arizona, prosecutorial misconduct significant judicial error and claims of insufficient evidence.

2.     Statement of constitutional claim:

Sixth Amendment Right to Effective assistance of counsel. Right to Expert Witness Testimony.  (U.C. Const., Ohio Const.) Palacios v. Burgue, 589 F.3d 347, 352-53 (5th Cir. 2010).

Short statement of facts supporting the claim:

Mr. Daniel Arnold refused summon Mr. Jefferson's eye witness (Ward v. Dretke) LaShanna Haney and he sent 3 of Mr. Jefferson's witness in court on the first of trial.  Also, Mr. Arnold failed summon Medical and Ballistic experts.

Doc. 28-1, pp. 123-126.  Jefferson also sought a ballistic expert (Doc. 28-1, p. 125) and filed a motion for appointment of counsel (Doc. 28-1, pp. 128-130).  On November 8, 2017, the State opposed Jefferson's petition.  Doc. 28-1, pp. 131-141.  On November 20, 2017, the trial court granted Jefferson's motion for appointment of counsel and appointed counsel to handle Jefferson's petition.  Doc. 28-1, pp. 142-143.  On December 1, 2017, through appointed counsel, Jefferson filed a reply in support of his petition and request for expert assistance.  Doc. 28-1, pp. 144-147.  On December 20, 2017, the trial court denied Jefferson's petition and denied his request for expert assistance.  Doc. 28-1, pp. 148-149.  Jefferson did not appeal the trial court's December 20, 2017, order.

### E. Successive petition to vacate or set aside judgment of conviction or sentence and other motions

On March 27, 2018, Jefferson, pro se, filed a Motion to Obtain New Evidence, requesting a December 3, 2015, Toledo Police Department report; a 9-1-1 call from February 3, 2016 from alleged victim's GPS or satellite location; and Detective Sherri Wise's full report and interrogation video.  Doc. 28-1, pp. 151-155.  That same day, Jefferson filed an affidavit and memorandum in support, stating that he had recently learned about the trial court's denial of his post-conviction petition because his post-conviction counsel informed him that the court had an incorrect address for her so she was not notified of the ruling until checking the docket on February 13, 2018.  Doc. 28-1, pp. 156-158.

On April 13, 2018, Jefferson, pro se, filed a Successive Petition to Vacate or Set Aside Judgement of Conviction or Sentence.  Doc. 28-1, pp. 159-166.  In his successive petition, Jefferson asserted the following claims:

1. Prosecutorial misconduct which violates the (14) Fourteenth Amendment of the United States Constitution.

13

During trial the states prosecutors did not introduce the DVD of Detective Sherri Wise's interrogating Petitioner on February 3, 2016.  Since State's prosecutors withheld this DVD, a major piece of evidence that could have proven the Petitioner's actual innocence.  See Youngblood v. West Virginia 547 U.S. 867, 870, 126 S.Ct. 2188, 165 L.Ed.2d 269 (2006).

This DVD is already in evidence and is considered "NEW EVIDENCE" because prosecutors failed to present or introduce this at trial so it can be found and reviewed by the Court without being attached to this Petition. See. District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 129 S.Ct. 2308, 2319, 174 L.Ed.2d 38 (2009).  Prosecutors violated the Brady rule because all evidence such as finger prints, e-mails, test results, reports, recordings and notes should have been introduced at trial, U.S. v. Olsen, 704, F3d 1172, 1181-85 (9th Cir. 2013).  This DVD recording will show the Petitioner was under duress and unable to use an ink pen due to his hand being injured so in this event, would have demonstrated that the would be no way how he could use his hands to pick up a gun.

2.  Search and seizure Evidence obtained illegally was introduced at trial to prove guilt and because of this being presented in a matter which was unlawful, a reversal is due, Chapman v. California, 386 U.S. 18, 23-24 (1967).  4th Fourth Amendment violations through Mapp v. Ohio, 367 U.S., 232 U.S. 383. 398, (1914) evidence also violates the 5th Amendment.

Toledo police forced entry in 2055 Elliott Ave in Toledo, Lucas County, Ohio on February 3rd, 2016, and seized three guns after they seized the Petitioner outside of the house.  Toledo Police told the Petitioner to step out and go to the Safety Building for questioning but handcuffed and slammed him on his face and then snatched his brace of his right hand and before transporting him to the Toledo Police Station without no MIRANDA rights being read or said or any reason given for arrest.  Petitioner's case was dismissed in the Toledo Municipal Court on or about February 12, 2016 and should have been redeemed from custody but the State illegally kept him in custody and then on February 17, 2016, Petitioner was indicted and served his warrant, while in custody of the Lucas County Correctional Center.

Evidence supporting this claim is not attached because Petitioner needs the assistance of the Prosecutor's office to produce the evidence.

Doc. 28-1, pp. 160-161.  On July 23, 2018, the State filed a motion for summary

judgment/motion to dismiss Jefferson's second petition to vacate, motion to obtain new

evidence, and all remaining motions.[5]  Doc. 28-1, pp. 167-177.  On August 7, 2018, the trial

court denied Jefferson's second petition for post-conviction relief as untimely and not subject to

exception and the trial court denied Jefferson's other remaining motions.  Doc. 28-1, pp. 178-

179.

On August 14, 2018, Jefferson filed a motion to supplement the record with copies of his

hospital records, arguing that the records prove that he could not have committed the offenses

because of hand injuries.  Doc. 28-1, pp. 180-256.  On August 24, 2018, the State filed an

opposition to Jefferson's motion to supplement the record.  Doc. 28-1, pp. 257-258.

On September 7, 2018, Jefferson filed a Motion for Reconsideration wherein he

requested that the trial court reconsider his case as a whole based on the medical records that he

was seeking to have added to the record.  Doc. 28-1, pp. 259-260.  On October 22, 2018,

Jefferson filed a Motion for Summary Judgment on his motion for reconsideration.  Doc. 28-1, p.

261.  On October 24, 2018, Jefferson filed a Motion to Subpoena witnesses to be present at a

hearing.  Doc. 28-1, p. 262.  On October 30, 2018, the State opposed Jefferson's Motion for

Summary Judgment and Motion to Subpoena witnesses.  Doc. 28-1, pp. 263-265.

On October 31, 2018, the trial court ruled that, in his Motion for Summary Judgment,

Jefferson was requesting that the court vacate his conviction.  Doc. 28-1, p. 266.  Thus, the court

treated the motion as a motion for post-conviction relief and denied it as successive, untimely,

and without exception.  Doc. 28-1, pp. 266-267.  The trial court also denied the request to

subpoena witnesses, finding that the relief sought pertained to a hearing not provided for in law.

Doc. 28-1, pp. 266-267.  Jefferson did not file an appeal with the court of appeals.

---

[5] Although not contained in the record, the briefing filed in connection with Jefferson's various post-conviction
motions indicates that another motion filed by Jefferson was a motion to subpoena a transcript of a phone interview
involving an individual named Lashanna Haney.  Doc. 28-1, pp. 167, 176.

### F.  Federal habeas corpus

Jefferson filed his federal habeas petition on March 18, 2018.[6]  Doc. 1.  Thereafter,

Jefferson sought and was granted leave to file an Amended Petition.  Docs. 6 & 18.  Jefferson

filed an amended petition on November 26, 2018.  Doc. 22.  Respondent does not seek to strike

the amended petition but Respondent asserts that Jefferson's amended petition goes beyond the

Court's authorization for leave to amend, noting that the Court granted Jefferson leave to amend

"in a manner consistent with the proposed amendments identified in his motion to amend."  Doc.

18, p. 2.  While Jefferson's amended petition may go beyond the more specific amendments that

Jefferson proposed in his motion to amend, considering Jefferson's pro se status and that

Respondent has filed a Return of Writ in response to the amended petition, this Report and

Recommendation addresses the Petition as amended on November 26, 2018 (Doc. 22).  In his

amended petition, Jefferson asserts four grounds for relief.  Doc. 22, pp. 13-28.  Due to the

lengthy argument/supporting facts included in the amended petition with each ground for relief,

undersigned has summarized the grounds for relief as follows:

> 1.  **GROUND ONE**: Ineffective assistance of trial counsel in violation
>     of the Sixth Amendment U.S. Constitutional right.

In Ground One, Jefferson asserts that his trial counsel was constitutionally ineffective,

arguing that his trial counsel: (1) was deficient in advising Jefferson to reject a plea deal and

proceed to trial; (2) did not follow procedures for renewing a Criminal Rule 29(c) motion; (3) did

not raise as an issue the fact that Jefferson told his trial counsel that he realized he knew one of

the jurors; (4) did not properly cross-examine the victim, Jeanette Ervin, and did not make sure

---

[6] *See* FN 1 above.

16

that Ms. Ervin was advised of her Fifth Amendment rights; and (5) overlooked relevant evidentiary matters, including the need to obtain forensic testing, the need to subpoena an eye witness and present testimony from certain other witnesses sent home from the trial, the need to introduce the DVD of Detective Wise's interrogation, and the need to subpoena medical records. Doc. 22, pp. 13-17.

2.    **GROUND TWO**: Insufficient evidence.

In Ground Two, Jefferson contends that there was insufficient evidence to convict him of felonious assault and having weapons while under disability.  Doc. 22, pp. 17-18.  He argues that no actual victim was injured; there was no eye witness testimony to prove Jefferson actually shot a gun; there was no forensic testing to prove Jefferson shot a firearm; there was no evidence to prove Jefferson was the owner or lease holder of the property at 2005 Elliott Ave. where the firearms were located.  Doc. 22, pp. 17-18.

3.    **GROUND THREE**: Prosecutorial misconduct.

In Ground Three, Jefferson argues that his due process rights were violated because the prosecutor improperly introduced bad character evidence at trial by using Jefferson's prior drug conviction from 2007.  Doc. 22, pp. 19-20.  He asserts that the prosecutors violated his due process rights and the prosecutors violated the Brady rule when they failed to introduce and withheld from the jury the Detective Wise interrogation DVD from the night of February 3, 2016.  Doc. 22, pp. 20-21.  He also argues that the prosecutors violated his rights because they did not introduce evidence sufficient to prove the elements of the offenses on which he was charged.  Doc. 22, pp. 21-26

4.    **GROUND FOUR**: Search and seizure.

17

In Ground Four, Jefferson argues that the Toledo police unlawfully seized him and unlawfully searched the property at 2055 Elliott Ave.  Doc. 22, pp. 27-28.

### III.  Law and Analysis

#### A.  Standard of review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to petitions filed after the effective date of the AEDPA.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  In particular, the controlling AEDPA provision states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. at 599-600 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous."
*Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The state court's application of clearly established
law must be objectively unreasonable." *Id.*

In order to obtain federal habeas corpus relief, a petitioner must establish that the state
court's decision "was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v.
Dixon*, 132 S. Ct. 26, 27 (2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).
This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions
in the state criminal justice systems,' not a substitute for ordinary error correction through
appeal." *Richter*, 131 S. Ct. at 786 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)
(Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim
lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the
correctness of the state court's decision." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652,
664 (2004)). The petitioner carries the burden of proof. *Cullen v. Pinholster*, 131 S.Ct. 1388,
1398 (2011).

### B. Exhaustion and procedural default

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted
all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal
constitutional claims must fairly present those claims to the state courts before raising them in a
federal habeas corpus action. 28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6
(1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*,
444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003))
("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not

'fairly presented' to the state courts").  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.[7]  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 324-325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).  Further, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).

Additionally, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as . . . rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies where state remedies are "still available at the time of the federal petition."  *Id.* at 806 (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.

---

[7] In determining whether a petitioner presented his claim in such a way as to alert the state courts to its federal nature, a federal habeas court should consider whether the petitioner: (1) relied on federal cases employing constitutional analysis; (2) relied on state cases employing constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.  *McMeans,* 228 F.3d at 681.

First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id.* In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D.Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State v. Moreland*, 50 Ohio St.3d 58, 62 (1990)(failure to present a claim to a state court of appeals constituted a waiver). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806. While the exhaustion requirement is technically satisfied because there are no longer any

state remedies available to the petitioner, see *Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review.  *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered.  *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him."  *Id.* at 753.  "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Id.*  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'"  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

### C.  Jefferson's grounds for relief

#### 1.  Ground One should be DISMISSED

In Ground One, Jefferson asserts that his trial counsel was constitutionally ineffective, arguing that his trial counsel: (1) was deficient in advising Jefferson to reject a plea deal and proceed to trial; (2) did not follow procedures for renewing a Criminal Rule 29(c) motion; (3) did not raise as an issue the fact that Jefferson told his trial counsel that he realized he knew one of the jurors; (4) did not properly cross-examine the victim, Jeanette Ervin, and did not make sure that Ms. Ervin was advised of her Fifth Amendment rights; and (5) overlooked relevant evidentiary matters, including the need to obtain forensic testing, the need to subpoena an eye witness and present testimony from certain other witnesses sent home from the trial, the need to

22

introduce the DVD of Detective Wise's interrogation, and the need to subpoena medical records. Doc. 22, pp. 13-17.

Respondent contends that Ground One is subject to dismissal because Jefferson procedurally defaulted the claims asserted therein and is unable to overcome that default. Doc. 28, pp. 25-27. For the reasons discussed below, the undersigned agrees.

In his direct appeal, Jefferson argued that the trial court erred in denying his Crim. R. 29 motion and that his conviction was against the manifest weight of the evidence. Doc. 28-1, pp. 26, 33-37, 38-39. Even though the alleged instances of ineffective assistance of trial counsel could have been raised in Jefferson's direct appeal, he failed to raise them. Jefferson raised ineffective assistance of trial counsel in his first post-conviction petition. Doc. 28-1, p. 88. However, the trial court denied his petition, finding that claims which had been or could have been adjudicated by the appellate court were barred and that Jefferson provided nothing outside the record to support his claims. Doc. 28-1, pp. 148-149. Furthermore, Jefferson's post-conviction petition did not include all of the alleged ineffective assistance of counsel claims that he now seeks to be adjudicated in this federal habeas proceeding. And, Jefferson did not appeal either of the trial court orders denying his post-conviction petitions.

Jefferson failed to raise the alleged ineffective assistance of trial counsel claims through the state court's ordinary appellate review procedures. *See Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). Further, to the extent that presenting his ineffective assistance of trial counsel claims in a state post-conviction proceeding was the proper avenue for seeking review of those claims, he failed to pursue an appeal of the state court's denial of his requests for post-conviction relief. Jefferson has not shown nor does he contend that he remains able to raise his ineffective assistance of trial counsel claims in state court. *See Wong v. Money*, 142 F.3d 313,

23

322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."); *State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal). With no state-court remedies still available to him, Jefferson has defaulted the claims. *See Williams*, 460 F.3d at 806 "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.") (citing *Engle*, 456 U.S. at 125, n. 28); *see also Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also Moreland*, 50 Ohio St.3d at 62 (failure to present a claim to a state court of appeals constituted a waiver).

To overcome the procedural fault, Jefferson must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren*, 440 F.3d at 764. A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the

24

proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).

To the extent that Jefferson argues that ineffective assistance of appellate counsel should excuse his procedural default of Ground One, his claim fails.  "Attorney error that constitutes ineffective assistance of counsel is cause" to overcome procedural default.  *Coleman v. Thompson*, 501 U.S. 722, 754 (1991).  However, claims of ineffective assistance of counsel cannot provide cause for the procedural default of another claim if the ineffective assistance claim itself is procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Although, "that procedural default may [] *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim."  *Id.* (emphasis original).

Jefferson argued in an application to reopen his appeal that his appellate counsel was ineffective for failing to raise ineffective assistance of trial counsel in his direct appeal.  Doc. 28-1, p. 118.  However, he procedurally defaulted that claim because, as found by the state court of appeals, Jefferson failed to timely file his application and he failed to demonstrate good cause for the untimely filing.  Doc. 28-1, p. 120.  Moreover, Jefferson did not appeal the Sixth District Court of Appeals' denial of his application to reopen.[8]  Thus, in order for alleged ineffective assistance of appellate counsel to serve as cause to excuse the procedural default, Jefferson must demonstrate cause and prejudice to excuse the procedural default of his ineffective assistance of appellate counsel claim.

---

[8] Jefferson's inclusion of a claim of ineffective assistance of appellate counsel in his discretionary appeal to the Supreme Court of Ohio does not save his ineffective assistance of appellate counsel claims from procedural default. *See e.g., Ramirez v. Ross Correctional Inst.*, 2016 WL 5903231, ** 2-3 (N.D. Ohio Oct. 11, 2016) (finding that petitioner's discretionary appeal to the Supreme Court of Ohio did not preserve his ineffective assistance of appellate counsel claims where the Supreme Court of Ohio declined jurisdiction and the petitioner failed to appeal from the court of appeals' denial of petitioner's App. R. 26(B) application) (relying on *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012)).

With respect to "cause," Jefferson must demonstrate that an objective external factor prevented his ability to comply with App. R. 26(B) filing requirement.   He has not done so.

In his Petition and Traverse, Jefferson appears to seek to excuse errors he may have made in pursuing the claims he now seeks to raise in this federal habeas proceeding due to lack of legal training and mental and physical issues caused by epilepsy.  Doc. 22, p. 26 ("If in fact errors were made in any filing procedure with legal or law procedure Jefferson is a layman of the law and he has a chronic medical condition called Epilepsy that may impair him at times mentally and physically."); Doc. 30-1, p. 1 (asserting "I lack any legal training and I am a layman of the laws and legal procedures" and "my Epilepsy gave me some mental and physical set backs meaning memory problems and ability to opperate [sic] close to normal.").  However, "a petitioner's lack of legal training, standing alone, is insufficient to establish cause." *Terry v. Jackson*, 2017 WL 5664915, * 2 (6th Cir. Jul 17, 2017) (unpublished) (citing *Bonilla v. Hurley,* 370 F.3d 494, 498 (6th Cir. 2004)).  Moreover, the issue of whether a petitioner's mental limitations can serve as cause to excuse a procedural default has not been directly addressed by the Sixth Circuit.  *Terry*, 2017 WL 5664915, * 2 (citing *Clark v. United States*, 764 F.3d 653, 660 n. 3 (6th Cir. 2014)).  But, even if mental limitations could serve as cause to excuse a procedural default, Jefferson raises only a general claim that his medical condition may impair him at times.  Doc. 30-1, p. 1.  He makes no specific showing as to how his mental "set backs" prevented him from timely filing his application to reopen his appeal or his failure to file an appeal from the state court of appeals' denial of his application reopen.  *See e.g. Terry*, 2017 WL 5664915, * 2 (finding petitioner was unable to excuse a procedural default where the petitioner "did not indicate in any clear way . . . how her mental illness prevented her from understanding relevant legal deadlines and obligations"); *see also Peterson v. Klee*, 2015 WL 4389785, * 7-8

(E.D. Mich. July 15, 2015) (concluding that petitioner was unable to demonstrate that his incompetence served as cause to excuse his procedural default); *Kanios v. Baker*, 961 F.2d 1577, 1 (6th Cir. 1992)(unpublished table decision) (rejecting petitioner's claim that his procedural default should be excused because he was on medication for depression following his conviction).  Furthermore, Jefferson has demonstrated an ability to comply with other filing requirements and, notwithstanding his mental "set backs," has filed a multitude of other motions seeking relief in various courts.  Thus, the undersigned is unable to conclude that his mental "set backs" were an objective factor external to him that prevented him from complying with state procedural rules for presenting his alleged ineffective assistance of counsel claims at every level of the state court proceedings.

Although not clearly raised as a basis to excuse his procedural default of Ground One, to the extent Jefferson claims that his failure to appeal the denial of his post-conviction petition (that included claims of ineffective assistance of trial counsel (Doc. 28-1, p. 126)) should be excused because his post-conviction counsel, who was appointed by the trial court, belatedly notified him of the trial court's denial of his post-conviction petition due to the trial court having an incorrect office address for his post-conviction counsel (Doc. 28-1, pp. 156-158), his claim should fail.  The trial court's December 20, 2017, order denying his petition for post-conviction relief was sent by the trial court to Jefferson's counsel <u>and</u> also to Jefferson.  Doc. 28-1, pp. 150, 279.  Also, on December 27, 2017, a copy of the docket was sent to Jefferson as requested.  Doc. 28-1, p. 279.  And, even if Jefferson did not learn of the denial of his post-conviction petition until after the time for filing a notice of appeal had lapsed, Jefferson took no steps to seek leave to file a delayed appeal.  *See* App. R. 5.

Considering the foregoing, the undersigned finds that Jefferson has failed to demonstrate "cause" sufficient to overcome the procedural default of his ineffective assistance of trial counsel claims in Ground One.   Because Jefferson cannot establish "cause," the undersigned need not consider the "prejudice" prong of the procedural default analysis.  *See, e.g., Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).

A procedural default may also be excused by demonstrating a claim of actual innocence. A claim of actual innocence requires a showing of "new reliable evidence" and requires a showing of factual innocence, not mere legal insufficiency.  *See Schulp v. Delo*, 513 U.S. 298, 324 (1995); *Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998) for the proposition that "actual innocence means factual innocence, not mere legal insufficiency") (internal quotations omitted).  .

Jefferson asserts that he is actually innocent.  Doc. 22, p. 29.  However, he has not presented evidence showing factual innocence.  *See e.g., Malcum v. Burt*, 276 F.Supp.2d 664, 677 (E.D. Mich. 2003) ("[I]mpeachment evidence is . . . insufficient to justify invoking the fundamental miscarriage of injustice exception to the procedural default rule."); *Plaza v. Hudson*, 2008 WL 5273899, * 10 (N.D. Ohio Dec. 17, 2008) ("[I]mpeachment evidence of the victim's testimony . . . is insufficient to establish a gateway claim of actual innocence.").

For the foregoing reasons, the undersigned recommends that the Court DISMISS Ground One as procedurally defaulted.

### 2.     Ground Two should be DISMISSED in part and DENIED in part

In Ground Two, Jefferson contends that there was insufficient evidence to convict him of felonious assault and having weapons while under disability.  Doc. 22, pp. 17-18.  He argues that no actual victim was injured; there was no eye witness testimony to prove Jefferson actually shot

a gun; there was no forensic testing to prove Jefferson shot a firearm; there was no evidence to prove Jefferson was the owner or lease holder of the property at 2005 Elliott Ave. where the firearms were located.  Doc. 22, pp. 17-18.

### Having weapons while under disability

Respondent argues that Jefferson's claim that there was insufficient evidence to convict him of having weapons while under disability should be dismissed because Jefferson procedurally defaulted that claim.  Doc. 28, pp. 27-29.  For the reasons explained below, the undersigned agrees.

In his direct appeal, Jefferson challenged only the sufficiency of the evidence as to his conviction for felonious assault.  Doc. 28-1, p. 33 ("Appellant argues that although the trial court termed it a 'close call' in denying his Crim.R.29 motion on the Felonious Assault count, insufficient evidence was introduced by the state on essential elements of this charged offense.").  Since Jefferson failed to present his sufficiency of the evidence claim as to the having weapons while under disability conviction in his direct appeal, he has procedurally defaulted that claim.  *See Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848); *see also  Baston*, 282 F.Supp.2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."); *see also State*, 50 Ohio St.3d at 58 (failure to present a claim to a state court of appeals constituted a waiver).  With no state-court remedies still available to him, Jefferson has defaulted the claim.  *Williams,* 460 F.3d at 806.

As with Ground One, in order to overcome his procedural default, Jefferson must demonstrate cause and prejudice or a fundamental miscarriage of justice if his sufficiency of the evidence claim regarding his having weapons under disability claim is not heard.   *Coleman*, 501 U.S. at 750.  Jefferson offers no grounds upon which the Court should find that the procedural

default of his sufficiency of the evidence claim regarding having weapons while under disability claim should be excused. To the extent that he contends that the default should be excused because of ineffective assistance of appellate counsel and/or because of his mental or physical conditions (Doc. 22, p. 18), for the reasons discussed above regarding Ground One, the undersigned finds that Jefferson's ineffective assistance of appellate counsel claims were also procedurally defaulted and Jefferson cannot demonstrate cause to excuse said default. Also, Jefferson has not established a claim of actual innocence as to his having weapons while under disability such that not excusing his procedural default will result in a fundamental miscarriage of justice. His arguments are premised on legal insufficiency, not factual innocence. For example, he argues that there are no official records showing he owned or leased the property where he was on the evening of the incident and where the guns were located. *See e.g.*, Doc. 22, p. 17. Yet, whether or not Jefferson owned or leased the real property does not demonstrate actual innocence of the offense of having weapons while under disability. Moreover, as the state court of appeals found when analyzing Jefferson's sufficiency of the evidence claim regarding his felonious assault conviction, Jefferson changed his story several times during Detective Wise's interrogation and admitted to shooting a possum earlier in the day in an attempt to explain the .25 caliber spent shell casing. Doc. 28-1, p. 74, ¶ 20. Thus, Jefferson's claim that his sufficiency of the evidence claim as to the having weapons while under disability conviction should be heard in this federal habeas proceeding notwithstanding his procedural default of the claim because he is actually innocent of the charge is unavailing.

For the foregoing reasons, the undersigned recommends that the Court DISMISS the Ground Two sufficiency of the evidence claim regarding having weapons while under disability as procedurally defaulted.

*Felonious assault*

Respondent argues that Jefferson's sufficiency of the evidence claim with respect to the felonious assault conviction should be denied on the merits because the state court of appeals' determination regarding said claim was not contrary to or an unreasonable application of clearly established federal law.  Doc. 28, pp. 27-37.  For the reasons explained below, the undersigned agrees.

In reviewing a claim that a petitioner's conviction was not supported by sufficient evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Under this standard, deference is due the jury's determination.  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The standard is not whether the trier of fact made the correct guilt or innocence determination but, rather, whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993).   Thus, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies.  *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (reaffirming that sufficiency of the

evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference").  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

In rendering its decision affirming Jefferson's conviction for felonious assault, the state court of appeals addressed the sufficiency claim, stating:

> {¶ 14} In appellant's first assignment of error, he argues that the trial court erred in denying his Crim.R. 29 motion as to his conviction for felonious assault.

> {¶ 15} A motion for acquittal under Crim.R. 29(A) is a challenge to the sufficiency of the evidence. *See State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. The denial of a motion for acquittal under Crim.R. 29(A) "is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

> {¶ 16} Initially, the state argues that appellant waived his right to challenge the trial court's denial of the Crim.R. 29 motion by failing to renew his motion at the close of all of the evidence. In *State v. Messer*, 6th Dist. Lucas No. L-16-1109, 2017-Ohio-1223, we held that "a criminal defendant does not waive the right to challenge the sufficiency of the evidence or the denial of a Crim.R. 29(A) motion despite failing to renew the motion following the close of all evidence." *Id.* at ¶ 18. Thus, we reject the state's waiver argument.[1] Next, we consider whether the evidence presented by the state at trial was sufficient to support appellant's conviction for felonious assault.

[FN 1] Additionally, we note that appellant did not present any evidence of his own in this case. Consequently, renewing his Crim.R. 29 motion would have been futile.

{¶ 17} Under R.C. 2903.11(A)(2), a defendant may be convicted of felonious assault for causing or attempting to cause physical harm to another by means of a deadly weapon. "Firing a gun in a person's direction is sufficient evidence of felonious assault." *State v. Jordan*, 8th Dist. Cuyahoga No. 73364, 1998 WL 827588, *12, 1998 Ohio App. LEXIS 5571, *31 (Nov. 25, 1998). According to appellant, the state failed to introduce sufficient evidence to establish that he fired a shot at Ervin as she was fleeing from the residence.

{¶ 18} In denying appellant's Crim.R. 29 motion, the trial court characterized this case as a "close call." We agree. While the state did not introduce direct evidence as to whether appellant pointed his firearm at Ervin and pulled the trigger, we find that the circumstantial evidence was sufficient to establish that he did so.

{¶ 19} During her testimony at trial, Ervin testified that she clearly heard a gunshot ring out from the area around the front porch as she was running out of the residence. Prior to this point, appellant was enraged at the thought of Ervin terminating the marriage, and had already violently reacted by biting Ervin and attempting to prevent her from leaving the residence. During the incident, Ervin observed a handgun sitting on a nearby table. After arriving at her vehicle following the gunshot, she looked back and saw appellant reentering the residence from the front porch.

{¶ 20} During the ensuing investigation, authorities recovered several firearms inside the residence. One of these firearms contained ammunition that matched a .25 caliber spent shell casing that was discovered lying on top of the grass next to the front porch. Appellant attempted to explain the spent shell casing by admitting to having shot at a possum earlier in the day. However, according to detective Wise, appellant's story changed several times during the interrogation.

{¶ 21} Construing the foregoing evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that appellant attempted to cause Ervin serious physical harm by firing a shot in her direction as she attempted to escape the residence. Thus, the trial court properly denied appellant's Crim.R. 29 motion, and appellant's first assignment of error is not well-taken.

*Jefferson*, 2017-Ohio-7272, ¶¶ 14-21, 2017 WL 3575607, ** 3-4; *see also* Doc. 28-1, pp. 74-75

(alterations in original).

The focus of Jefferson's sufficiency argument is that there was no direct evidence that he committed the offense of felonious assault as charged and that the victim's testimony was not credible.  Doc. 22, pp. 17-18, Doc. 30, pp. 5-7.  However, "[c]ircumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson*, 200 F.3d at 992; *see also Durr*, 487 F.3d at 449 ("circumstantial evidence is entitled to equal weight as direct evidence").  Additionally, as discussed above, in making a determination as to sufficiency of the evidence, a court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [trier of fact]."  *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir. 2003).   The jury heard the testimony of the witnesses and evaluated the credibility of the witnesses' testimony, including that of Ms. Ervin.  Having done so, the jury reached a guilty verdict.

Furthermore, as discussed above, on federal habeas review, two layers of deference apply.  Accordingly, even if this Court were to conclude that a rational trier of fact could not have found petitioner guilty beyond a reasonable doubt, the Court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205 (citing 28 U.S.C. § 2254(d)(2)) (emphasis in original)*; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  As found by the state court of appeals, the circumstantial evidence was sufficient to establish that Jefferson committed the offense of felonious assault.  Jefferson has not shown that that the state court of appeals unreasonably concluded that there was sufficient evidence to convict Jefferson of felonious assault.  Nor has he shown that the state court of appeals' sufficiency determination was contrary to or an unreasonable application of clearly established federal law, as required under AEDPA.

34

Based on the foregoing, the undersigned concludes that federal habeas relief is not warranted based on Jefferson's sufficiency of the evidence claim and, therefore, recommends that the Court DENY Jefferson's sufficiency of the evidence claim in Ground Two regarding the felonious assault conviction.

### 3.       Ground Three should be DISMISSED

In Ground Three, Jefferson argues that his due process rights were violated because the prosecutor improperly introduced bad character evidence at trial by using Jefferson's prior drug conviction from 2007. Doc. 22, pp. 19-20. He asserts that the prosecutors violated his due process rights and the prosecutors violated the Brady rule when they failed to introduce and withheld from the jury the Detective Wise interrogation DVD from the night of February 3, 2016.[9] Doc. 22, pp. 20-21. He also argues that the prosecutors violated his rights because they did not introduce evidence sufficient to prove the elements of the offenses for which he was charged. Doc. 22, pp. 21-26.

Respondent argues that Ground Three should be dismissed as not cognizable on federal habeas review and/or due to procedural default. Doc. 28, pp. 16-18, 25-27. For the reasons discussed below, the undersigned finds that Ground Three should be dismissed due to procedural default.[10]

Although the alleged claims of prosecutorial misconduct would have been apparent from the face of the record, Jefferson did not present a prosecutorial claim in his direct appeal. In his

---

[9] Jefferson does not and cannot contend that prosecutors did not disclose the DVD to the defense prior to trial. As reflected in the record, the DVD was disclosed and, in fact, at the joint request of the prosecution and defense, the DVD was considered by the trial court in ruling on Jefferson's motion to suppress. Doc. 28-1, pp. 16-17.

[10] Respondent presents a thorough argument as to why the claim of prosecutorial misconduct premised on the prosecutor's reference to a 2007 drug conviction should be dismissed as not cognizable on federal habeas review. Doc. 28, pp. 16-18. Since the entirety of Ground Three is subject to dismissal due to procedural default, the Court need not separately address the alternative ground for dismissal.

application to reopen his direct appeal, Jefferson made a brief mention in his second assignment of error that the prosecutor mentioned a 2007 drug conviction. Doc. 28-1, p. 113. In his first petition for post-conviction relief, Jefferson mentions prosecutorial misconduct but it is not clear he in fact fairly presented a claim of prosecutorial misconduct. Doc. 28-1, p. 135 (State's opposition brief), Doc. 28-1, pp. 148-149 (trial court's order denying post-conviction petition finding that Jefferson raised a manifest weight of the evidence claim and ineffective assistance of counsel claim). In his second petition for post-conviction relief, Jefferson raised a prosecutorial misconduct claim, arguing misconduct because the prosecutors did not introduce all evidence, including the interrogation DVD at trial. Doc. 28-1, pp. 160-161.

Since Jefferson did not raise his prosecutorial misconduct claims in his direct appeal, his claims are procedurally defaulted. *See Wong*, 142 F.3d at 322 ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of res judicata."). Assuming arguendo that Jefferson raised ineffective assistance of appellate counsel based on a failure to raise prosecutorial misconduct in his direct appeal in his App. R. 26(B) application, to the extent he seeks to rely on ineffective assistance of appellate counsel as cause to excuse his procedural default of his Ground Three claims, his attempt to do so is futile. As discussed above, Jefferson procedurally defaulted his ineffective assistance of counsel claims by failing to timely file an App. R. 26(B) application and by failing to file an appeal from the state court of appeals' denial of his App. R. 26(B) application. Moreover, he is unable to demonstrate cause to excuse the procedural default of those ineffective assistance of counsel claims.

"The doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong*, 142 F.3d at 322. To the

extent that Jefferson raised prosecutorial misconduct in his post-conviction petitions in the same manner he raises it in this federal habeas proceeding, since those claims would have been apparent from the face of the record, he was precluded by *res judicata* from raising such claims in post-conviction proceedings.  *Perry*, 10 Ohio St. 2d at 180 (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal).  The trial court denied Jefferson's first petition for post-conviction relief, indicating that "claims which have been or could have been adjudicated by the appellate court are barred" and finding that Jefferson provided nothing outside the record to support his arguments.  Doc. 28-1, pp. 147-148.  The trial court denied Jefferson's second petition for post-conviction relief as untimely.  Doc. 28-1, p. 178.  Jefferson failed to appeal the trial court's denial of his post-conviction petitions and, as discussed above, he has not demonstrated cause to excuse the procedural default.  Also, Jefferson has not demonstrated that his procedural default should be excused based on a claim of actual innocence.

Based on the foregoing, the undersigned recommends that the Court DISMISS Ground Three as procedurally defaulted.

### 4.    Ground Four should be DISMISSED

In Ground Four, Jefferson argues that the Toledo police unlawfully seized him and unlawfully searched the property at 2055 Elliott Ave.  Doc. 22, pp. 27-28.

The Supreme Court has held, "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).   In *Riley v. Gray*, 674

F.2d 522, 526 (6th Cir. 1982), the Sixth Circuit "developed a two-step inquiry in assessing whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims." *Shepherd v. Warden, Pickaway Correctional Inst.*, 2011 WL 3664442, * 6 (S.D. Ohio May 31, 2011), *report and recommendation adopted*, 2011 WL 3652615 (S.D. Ohio Aug. 18, 2011). First, "the district court must determine whether the state procedural mechanism in the abstract, presents the opportunity to raise a fourth amendment claim." *Riley*, 674 F.2d at 526.  "Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism."  *Id.*  The Sixth Circuit more recently clarified that "the *Powell* 'opportunity for full and fair consideration' means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Enyart v. Coleman*, 29 F.Supp.3d 1059, 1087 (N.D. Ohio Jul. 11, 2014) (discussing and quoting *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013)).  Thus, when considering whether a petitioner has had a full and fair opportunity to litigate his Fourth Amendment claim, the Sixth Circuit directs that a court ask: "Did the state courts permit the defendant to raise the claim or not?"  *Id.* (quoting *Good*, 729 F.3d at 640).

With respect to the first inquiry under *Riley*, Ohio has a mechanism in place for resolving Fourth Amendment claims.  It provides a defendant, such as Jefferson, the opportunity to file a pretrial motion to suppress and the opportunity to take a direct appeal from the denial of the motion to suppress.  *See Riley*, 674 F.2d at 526 (finding that Ohio criminal and appellate rules provide adequate procedural mechanisms for litigation of fourth amendment claims).  With respect to the second inquiry under *Riley*, there is no indication that Jefferson's presentation of his Fourth Amendment claim was frustrated by a failure of Ohio's procedural mechanism.   He was represented by counsel.  He had an opportunity to file pre-trial motions and did in fact file a

pretrial motion to suppress statements he made, which was decided by the trial court following a hearing.  Doc. 28-1, pp. 8-18.  Jefferson did not present his Fourth Amendment claims in the trial court.  Nor did not he present them in his direct appeal.  It was not until he filed an untimely second petition for post-conviction relief on April 13, 2018, that he sought to raise his Fourth Amendment claims.  Doc. 28-1, pp. 161-162.

Jefferson had the ability to litigate his search and seizure claim at the trial court and in his appeal.  However, he did not.  Jefferson fails to identify anything in the state court record to suggest that his ability to present his Fourth Amendment claims was frustrated as a result of the state court's process for presentation of such claims.  Thus, the undersigned recommends that the Court DISMISS Ground Four as barred by *Stone v. Powell*.  Alternatively, even if not barred by *Stone v. Powell*, the Court should DISMISS Ground Four as procedurally defaulted because, when Jefferson ultimately raised his search and seizure claim in his second post-conviction petition, the trial court denied his petition as untimely and Jefferson did not file an appeal from the trial court's denial.  As discussed above, Jefferson is unable to demonstrate cause to excuse the procedural default or a claim of actual innocence.

## IV.     Recommendation

For the reasons stated herein, the undersigned recommends that the Court **DISMISS and/or DENY** Jefferson's Petition (Doc. 1/Doc. 22). Grounds One, Three and Four should be dismissed. Ground Two should be dismissed and/or denied.


*/s/ Kathleen B. Burke*
_____

Dated: May 15, 2019
         Kathleen B. Burke
         United States Magistrate Judge



## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).