## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Tanelle Jefferson,** | **Case No. 3:18cv779** |
| **Petitioner,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| | **Magistrate Judge Kathleen Burke** |
| **State of Ohio,** | |
| **Respondent** | **MEMORANDUM OPINION AND ORDER** |

Petitioner Tanelle Jefferson, proceeding *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254 concerning his state court conviction in the matter of *State v. Jefferson*, Lucas County Court of Common Pleas Case No. G4801-CR-0201601280.   (Doc. Nos. 1, 22.)  This matter is before the Court upon the Report & Recommendation ("R&R") of Magistrate Judge Kathleen Burke (Doc. No. 34), which recommends that the Petition be denied.  Magistrate Judge Burke also recommends that Petitioner's Motions for Appointment of Counsel (Doc. No. 16), for Discovery (Doc. Nos. 17, 25), and to Expand the Record (Doc. Nos. 24, 31) be denied.

Petitioner has filed Objections to the R&R.  (Doc. No. 35.)  In addition, Petitioner has filed a Motion for Emergency Release due to the COVID-19 pandemic.  (Doc. No. 36.)

For the following reasons, Petitioner's Objection (Doc. No. 35) is OVERRULED and the Magistrate Judge's Report & Recommendation (Doc. No. 34) is ACCEPTED as set forth herein. Petitioner's Motion for Emergency Release (Doc. No. 36) is DENIED.

## I.  Relevant Procedural History[1]

The Court of Appeals for the Sixth District of Ohio (hereinafter "state appellate court") summarized the facts underlying Jefferson's state court conviction as follows:

{¶ 2} On February 12, 2016, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(3), a felony of the third degree. Based upon the allegation that appellant committed the felonious assault while in possession of a firearm, a firearm specification was attached to the felonious assault under R.C. 2941.145.

{¶ 3} Thereafter, appellant entered pleas of not guilty to the aforementioned charges, and the matter proceeded to discovery. Following pretrial proceedings and motion practice, a two-day jury trial commenced on July 18, 2016.

{¶ 4} At trial, the state first presented the testimony of appellant's wife, Jeanette Ervin. Ervin and appellant were married in December 2015. According to Ervin, the marriage "started out fun," but eventually became abusive. Specifically, Ervin stated: "Well, after being together for a while, I noticed some changes in [appellant]. He would always grab on my clothes, rough me up, and he had that temper about [himself] and I would have to fight him off." Due to the abuse that was existent within their marriage, appellant and Ervin resided separately.

{¶ 5} Three months into the marriage, Ervin decided that it was time to end her relationship with appellant. After Ervin informed appellant of her decision to end the marriage, appellant asked Ervin to come to his house so that they could talk about possibly staying together. Ervin noticed that appellant was drinking from a bottle of Hennessy brandy when she arrived at his house. During the discussion, Ervin also noticed a handgun sitting on a nearby table.

{¶ 6} When Ervin informed appellant that she was leaving him, he told her that she was not going anywhere. Ervin then attempted to exit appellant's home. At trial, Ervin recounted the ensuing incident as follows:

And as I'm trying to get out the door, the front door, he's blocking me. So I break and run through the dining room to the kitchen to go down these steps to get away from him. And he put his foot on the back door and said, you're not going anywhere.

---

[1] The Court's recitation of the relevant procedural history is not intended to be exhaustive. Rather, the Court will set forth only that procedural history necessary to a resolution of the pending Objections.

All of a sudden he [started] screaming and hollering and I'm just begging him, please. I called him Tee Jay. Tee Jay, let me go. I want to go home, leave me alone. I don't want to be here with you anymore. Let me go.

He kept saying, no, screaming and hollering, still got ahold of my clothes, to my clothes. I go back up the steps to the kitchen and the voice that came out of him was something like I've never heard before, like demons. He was just screaming and hollering at me.

And I knew at that point something bad is getting ready to happen because I already knew he had that gun.

So I tried to keep quiet and not say anything and I'm—he got me backed up there against this thing and I'm like Tee Jay, let me go; I want to go home.

So I managed—he kept telling me I wasn't going to go. I managed to get around him, go through the dining room. He's going to grab me again. Still got my clothes. By that time this weapon, this gun, hits the floor. I say, it's time for me to break and run for my life.

I ran out that door so fast. I was trembling. I was scared to death. I feared for my life.

As I'm running out the door going down the steps I hear a pow. I'm like, oh, my God, he done shot at me, am I shot? I run around to my car. I'm shaking. I'm trembling. I'm falling down to my knees. The [key is] dropping out of my hand. I'm trying to get in my car to get away and I look through my car window to see where he was at after he shot at me. He's standing on this porch like it's nothing. He [turns] around and he walks back in the house.

{¶ 7} Upon further questioning, Ervin acknowledged that she did not actually witness appellant shoot at her because she was running away from him at the time. Nonetheless, appellant was insistent that she heard appellant fire a shot from where he was standing on the front porch of his home. When asked how she could be certain that appellant fired a shot at her, Ervin stated: "Because I heard the pow and I knew he had a gun. And he was angry."

{¶ 8} As its next witness, the state called Brian Heath. Heath and his partner, Scott Bruhn (whom the state called as its third witness), were the first officers to arrive on the scene after Ervin called 911. Initially, Heath set up a perimeter around appellant's house. Meanwhile, Bruhn questioned Ervin, who informed him that appellant had just shot at her and was still inside the home. Eventually, Heath and Bruhn took appellant

into custody. Upon further questioning, Ervin explained to Bruhn that appellant had shot at her from the front porch of the home.

{¶ 9} After learning that appellant fired a shot at Ervin from his front porch, Bruhn alerted the detective bureau and began searching the area around the porch for a shell casing. Bruhn was accompanied by another officer, Michael Watson. Ultimately, Watson discovered one Hornady .25 ACP caliber spent shell casing on top of the grass five to six feet from the edge of the front porch. According to Watson, the location of the shell casing was consistent with Ervin's contention that appellant fired at her while standing on the front porch.

{¶ 10} For its fourth witness, the state called Nathaniel Sahdala. Sahdala also responded to the scene after Ervin called 911. After appellant was arrested and taken into custody, Sahdala entered appellant's home. Upon entry, Sahdala entered the dining room, where he observed a portion of carpet that was folded over with the rear half of a handgun visible underneath the carpet. Sahdala then rolled back the rest of the carpet that was folded and discovered two additional firearms, both of which were loaded. Thereafter, Sahdala retrieved the firearms and unloaded the ammunition. One of the firearms was a .25 caliber handgun, which contained Hornady .25 ACP ammunition matching the shell casing that Watson discovered next to the front porch.

{¶ 11} As its final witness, the state called detective Sherri Wise. Wise arrived at appellant's residence and was involved in the removal of the firearms from the dining room. Wise eventually interviewed appellant at the police station, where appellant admitted to having fired a weapon earlier in the day. Initially, appellant insisted that he shot a possum. However, the type of animal that was allegedly shot changed several times during the course of Wise's interrogation of appellant. Further, appellant claimed that he shot the animal with a Winchester rifle, which was not located at the residence. Ultimately, the three handguns that were removed from the residence were tested and found to be operable. Notably, Wise corroborated the previous testimony that the .25 caliber handgun that was removed contained ammunition matching the spent shell casing found on the lawn adjacent to the front porch.

{¶ 12} At the close of the state's case-in-chief, appellant moved for an acquittal under Crim.R. 29, arguing that the state failed to provide sufficient evidence as to the felonious assault count. After hearing arguments, the court denied appellant's motion. The court then provided instructions to the jury, and deliberations began. Ultimately, the jury found appellant guilty of felonious assault and having weapons while under disability, as well as the attendant firearm specification. The court immediately proceeded to sentencing, ordering appellant to serve 7 years in prison for the felonious assault count and 30 months in prison for the having weapons while under disability count. The court ordered the sentences to be served consecutive to one another, and consecutive to the mandatory 3–year sentence imposed pursuant to the firearm

specification, for a total prison sentence of 12.5 years. Appellant's timely appeal followed.

*State v. Jefferson*, 2017 WL 3575607 at ** 1-3 (Ohio Ct. App. 6th Dist. Aug. 18, 2017).

Jefferson challenged his conviction and sentence on direct appeal, raising the following two grounds for relief:

I. The trial court erred to the prejudice of appellant by denying his Rule 29 motion upon completion of the State's case in chief.

II. Appellant's conviction was against the manifest weight of the evidence produced at trial.

(Doc. No. 28-1, Exh. 9.) On August 18, 2017, the state appellate court affirmed Jefferson's conviction and sentence. *See State v. Jefferson*, 2017 WL 3575607 (Ohio Ct. App. 6th Dist. Aug. 18, 2017).

On October 2, 2017, Jefferson, proceeding *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (Doc. No. 28-1, Exh. 12.) In his memorandum in support of jurisdiction, Jefferson raised the following propositions of law:

I. Due Process

II. Ineffective Assistance of Counsel

(Doc. No. 28-1, Exh. 13.) The Supreme Court of Ohio declined to accept jurisdiction on January 31, 2018. (Doc. No. 28-1, Exh. 14.)

Meanwhile, on December 1, 2017, Jefferson filed a *pro se* Application to Reopen his Appeal in the state appellate court pursuant to Ohio App. R. 26(B). (Doc. No. 28-1, Exh. 15.) Therein, Jefferson argued that his appellate counsel was ineffective for not raising ineffective assistance of trial counsel and violation of due process of law. (*Id.*) On January 11, 2018, the state appellate court

5

denied Jefferson's Application to Reopen on the grounds that it was untimely and Jefferson had not demonstrated good cause for the untimely filing.  (Doc. 28-1, Exh. 16.)

The record reflects Jefferson did not appeal from the state appellate court's denial of his 26(B) Application.

Jefferson then proceeded to file several *pro se* petitions to vacate or set aside judgment of conviction and sentence, as well as various post-judgment motions.  In his first Petition to Vacate or Set Aside Judgment of Conviction, Jefferson raised the following two claims:

1. Statement of constitutional claim:

Fifth and Fourteen Amendments, U.S. Constitution; Section 16, Article 1, Ohio Constitution Due Process right was violated my trial and prosecution. Trial – Transcripts of Proceeding (TP) Vol 1/2.

Short statement of facts supporting the claim:

A prosecutor is required to prove every element of the crime with which a defendant is charged beyond a reasonable doubt. The Winship "Beyond a reasonable doubt." Sullivan v. La, 508 U.S. 275, 278 (1993). Count 1 Felonious assault with a gun specification means a person knowingly attempt to or did cause harm to a person. There is no physical proof or evidence that indicated I could harm or actually harm Jeanette Ervin on the night of February 3rd, 2016 besides her testimony, in which she testified I roughed her up 2 months before her surgery in May, 2016 (TP Vol 1/2 p173) and Lucas County Correctional's records have actual fact that was impossible for me to do because I was in custody. Its unconstitutional for a prosecutor to make presumptions in criminal prosecution. Estelle v. McGuire, 502 U.S. 62, 72 (1991) Sandstrom v. Mont., 442 U.S. 510, 514 (1979). State witness, expert of the law, Toledo police officer Mr. Brian Heath stated (TP Vol. 1/2 p212 line 3-5) "Initially there was nobody outside. If I can recall correctly, the victim-caller was in her car and come to the location once we arrived." This fact that supports my story she wasn't there at 2055 Elliott at the time she call 9-1-1 meaning her accusations is false also and it was proven in court I didn't reside or have ownership to 2055 Elliott Ave another violation, Miranda v. Arizona, prosecutorial misconduct significant judicial error and claims of insufficient evidence.

2. Statement of constitutional claim:

Sixth Amendment Right to Effective assistance of counsel. Right to Expert Witness Testimony. (U.C. Const., Ohio Const.) Palacios v. Burgue, 589 F.3d 347, 352-53 (5th Cir. 2010).

Short statement of facts supporting the claim:

Mr. Daniel Arnold refused summon Mr. Jefferson's eye witness (Ward v. Dretke) LaShanna Haney and he sent 3 of Mr. Jefferson's witness in court on the first of trial. Also, Mr. Arnold failed summon Medical and Ballistic experts.

(Doc. No. 28-1, Exh. 17.)  The State of Ohio opposed Jefferson's Petition.  (Doc. No. 28-1, Exh. 19.)

The state trial court subsequently appointed counsel, who filed a reply in support of Jefferson's

Petition.  (Doc. No. 28-1, Exhs. 20, 21.)

On December 20, 2017, the trial court denied Jefferson's Petition, as follows:

The court construes Defendant's petition as a motion for post-conviction relief. As such, claims which have been or could have been adjudicated by the appellate court are barred. Defendant claims his convictions are against the-manifest weight of the evidence, and provides nothing outside the record in support of this contention. The appellate court rejected Defendant's manifest weight challenge in direct appeal. Defendant claims further that his counsel was ineffective, but again provides nothing outside the record to support this contention. Finally, Defendant's request for a ballistics expert is not well taken because even if the shell casing is found not to have come from Defendant's gun, that does not automatically mean Defendant did not shoot at the victim.

(Doc. No. 28-1, Exh. 22.)   The record reflects Jefferson did not appeal the trial court's ruling.

Jefferson then filed a Motion to Obtain New Evidence and, shortly thereafter, a Successive

Petition to Vacate or Set Aside Judgment, in the state trial court.  (Doc. No. 28-1, Exhs. 23, 24.)  The

trial court denied Jefferson's Successive Petition as untimely and not subject to exception, and also

denied his Motion to Obtain New Evidence.  (Doc. No. 28-1, Exh. 26.)  Jefferson filed a Motion for

Reconsideration, as well as several additional post-conviction motions.  (Doc. No. 28-1, Exhs. 27,

29, 30, 31.)  The trial court denied Jefferson's motions on October 31, 2018.  (Doc. No. 28-1, Exh.

33.)  Jefferson did not appeal the trial court's ruling.

7

On March 17, 2018,[2] Jefferson filed a *pro se* Petition for Writ of Habeas Corpus in this Court. (Doc. No. 1.)  Several months later, he filed a Motion to Amend his Petition, as well as a Motion for a Stay until post-conviction proceedings were exhausted.  (Doc. Nos. 6, 7.)  While these motions were still pending, the State filed a Return on Writ.  (Doc. No. 9.)  Jefferson then filed Motions to Supplement the Petition, for Appointment of Counsel, and for Discovery.  (Doc. Nos. 14, 16, 17.)

On October 29, 2018, the Magistrate Judge issued an Order granting Jefferson's Motion to Amend Petition.  (Doc. No. 18.)  On that same date, the Magistrate Judge also issued an Interim Report & Recommendation, in which she recommended that Jefferson's Motion to Stay be denied. (Doc. No. 19.)  The Magistrate Judge's Interim Report & Recommendation was later adopted by then-assigned District Judge Benita Pearson.  (Doc. No. 29.)

Meanwhile, on November 26, 2018, Jefferson filed an Amended Petition under 28 U.S.C. § 2254, in which he asserted the following grounds for relief:

I.      Ineffective Assistance of Counsel

II.     Insufficient Evidence

III.    Prosecutorial Misconduct

IV.     Search and Seizure

---

[2] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities. *See Houston v. Lack*, 487 U.S. 266 (1988).  While the Petition herein did not arrive at the Court for filing until April 6, 2018, Jefferson states that he placed it in the prison mailing system on March 17, 2018.  (Doc. No. 1 at 15.)  Thus, the Court will consider the Petition as filed on March 17, 2018.

(Doc. No. 22.)[3]  The State filed a Return of Writ on January 11, 2019, and Jefferson filed his Traverse on February 1, 2019.  (Doc. Nos. 28, 30.)  Several months later, on April 4, 2019, Jefferson filed a Motion to Expand the Record (Doc. No. 31), which the State opposed.

On May 15, 2019, the Magistrate Judge issued an R&R, in which she recommends that the Petition be denied.  (Doc. No. 34.)  The Magistrate Judge also recommends that Jefferson's Motions for Appointment of Counsel (Doc. No. 16), for Discovery (Doc. Nos. 17, 25), and to Expand the Record (Doc. Nos. 24, 31) be denied.

This matter was re-assigned to the undersigned on July 1, 2019 pursuant to General Order 2019-13.

Jefferson has filed Objections to the R&R.  (Doc. No. 35.)  In addition, on April 20, 2020, Jefferson filed a Motion for Emergency Release due to the COVID-19 pandemic.  (Doc. No. 36.)  The State filed a Brief in Opposition the next day.  (Doc. No. 37.)

## II.    Standard of Review

Parties must file any objections to a report & recommendation within fourteen days of service.  Fed. R. Civ. P. 72(b)(2).  Failure to object within this time waives a party's right to appeal the district court's judgment.  *See Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947, 949-950 (6th Cir. 1981).

"When a district judge reviews a magistrate judge's resolution of a non-dispositive matter, it is not a *de novo* review, as it is in relation to a magistrate judge's recommendation as to a dispositive matter." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, 2013 WL 992125 at *6 (S.D. Oh.

_____

[3] The supporting facts underlying these claims are set forth in the Magistrate Judge's May 15, 2019 R&R (Doc. No. 34 at pp. 16-18) and will not be repeated herein.

9

Mar. 13, 2013).  Rather, the Magistrate Judge's decision is subject to review under Rule 72(a) and reversal when it "is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A). *See Alvarado v. Warden, Ohio State Penitentiary*, 2018 WL 5783676 at * 1 (N.D. Ohio Nov. 5, 2018); *Phillips v. LaRose*, 2019 WL 5729919 at * 2 (N.D. Ohio Nov. 5, 2019).

The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard. *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F.Supp.2d 603, 605 (W.D. Tenn. 2009).  As the Sixth Circuit has explained, "'[a] [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  "An order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'"  *Id.*  (quoting *United States v. Winsper*, 2013 WL 5673617 at *1 (W.D. Ky. Oct. 17, 2013)).

When a petitioner objects to a magistrate judge's resolution of a dispositive matter, the district court reviews those objections *de novo*.  Fed. R. Civ. P. 72(b)(3).  Specifically, a district judge:

> must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*  "A party who files objections to a magistrate [judge]'s report in order to preserve the right to appeal must be mindful of the purpose of such objections: to provide the district court 'with the opportunity to consider the specific contentions of the parties and to correct any errors immediately.'" *Jones v. Moore*, 2006 WL 903199 at * 7 (N.D. Ohio April 7, 2006) (citing *Walters*, 638 F.2d at 949–50).

10

III.     **Analysis**

   A.     **Non-Dispositive Matters**

Jefferson objects to the Magistrate Judge's denial of his Motions for Appointment of Counsel, Discovery, and Expansion of the Record.  (Doc. No. 35 at pp. 1-3.)  As these matters are non-dispositive, the Court reviews Jefferson's Objections under the clearly erroneous or contrary to law standard, set forth above.

   1.     **Motion for Appointment of Counsel (Doc. No. 16.)**

Jefferson first objects to the Magistrate Judge's denial of his Motion for Appointment of Counsel.  (Doc. No. 35 at pp. 1.)  He asserts that his Motion should have been granted because the Sixth Amendment right to counsel applies to the instant habeas proceedings.  (*Id.*)

Jefferson's objection is without merit.  As the Magistrate Judge correctly noted, it is well established that a habeas corpus proceeding is civil in nature and the Sixth Amendment right to counsel afforded for criminal proceedings does not apply.  *See Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant*, 499 U.S. 467, 495 (1987)).  *See also Stockman v. Berghuis*, 627 Fed. Appx. 470, 475 (6th Cir. 2015); *Ross v. Coleman*, 2019 WL 8333533 at * 11 (N.D. Ohio July 1, 2019).

Moreover, Jefferson has not argued or shown that any other circumstances exist that would render the Magistrate Judge's denial of his Motion for Appointment of Counsel clearly erroneous or contrary to law.  A district court must appoint counsel for an indigent petitioner when an evidentiary hearing is required or when necessary for the petitioner's effective utilization of discovery.[4]  *See*

---

[4] In addition, an indigent petitioner seeking to vacate or to set aside a death sentence has a statutory right to appointed counsel, as well as expert and investigative services. 18 U.S.C. § 3599(a)(2). Here, however, Jefferson is not seeking to vacate or set aside a death sentence.

11

Habeas Rule 6(a).[5]  In all other circumstances, a district court has considerable discretion in deciding whether to appoint counsel.  The Sixth Circuit has noted, however, that appointment of counsel in non-capital habeas proceedings is justified only in "exceptional" circumstances.  *See Stockman*, 627 Fed. Appx. at 475 (stating the privilege of appointment of counsel in habeas proceedings is justified "only in exceptional circumstances.") (citing *Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir.1993)).

Here, Jefferson does not articulate any specific reasons explaining why he believes he is entitled to appointment of counsel.  Jefferson has not argued in his Objection that an evidentiary hearing is warranted and, as discussed *infra,* the Court finds that the Magistrate Judge did not err in denying Jefferson's Motion for Discovery.  Lastly, Jefferson has not otherwise shown that this is an exceptional case warranting the appointment of counsel.  Jefferson does not assert that he labors under disabilities unusual for a *pro se* petitioner; nor are the issues raised in his Petition unusually complex.  Indeed, as the Magistrate Judge noted, Jefferson has shown that he is capable of representing himself in these proceedings, having filed multiple motions herein including seeking (and receiving) leave to file an Amended Petition.

Accordingly, the Court finds that the Magistrate Judge's denial of Jefferson's Motion for Appointment of Counsel is neither clearly erroneous or contrary to law. Jefferson's Objection is without merit and overruled.

### 2.    Motions for Discovery (Doc. Nos. 17, 25)

---

[5] *See* 28 U.S.C. § 2254(h) ("Appointment of counsel under this section shall be governed by section 3006A of title 18."). 18 U.S.C. § 3006A(a)(2)(B) provides in part: "Whenever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under [§ 2254]."

Jefferson next objects to the Magistrate Judge's denial of his Motion for Discovery (Doc. No. 17) and Motion to Subpoena Toledo Police Report[6] (Doc. No. 25.)  *See* Doc. No. 35 at p. 2-3. Jefferson asserts that he "never had his discovery or seen all the evidence" and, therefore, he has been unfairly prejudiced in his ability to defend himself in this case.  (Doc. No. 35 at p. 2.)  It is not entirely clear what exactly Jefferson seeks to obtain in discovery, but he does state generally that "the discovery police report, ballistic results, as well as the weapon's backgrounds, Brady Act—the background on the weapons are relevant to [his] case."  (*Id.*)  Jefferson also suggests that he never received a DVD of an interrogation conducted of him by Detective Wise.  (*Id.*)

"[U]nlike the usual civil litigant in federal court, [a habeas petitioner] is not entitled to discovery as a matter of ordinary course."  *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Pursuant to Rule 6 of the Rules Governing Section 2254 Cases, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."  *See* Rule 6(a) of the Rules Governing Section 2254 Cases.  "Good cause" for discovery exists only "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief."  *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)) (ellipsis in original).  "The burden of demonstrating the materiality of the information requested is on the moving party."  *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)).  Habeas Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory

---

[6] The Toledo Police Report sought by Jefferson is dated December 2, 2015, two months prior to the offense for which he was convicted. According to Jefferson, this Reports relates to a call he made to the police asking for help because Ms. Ervin was attacking him and he was unable to get away.  (Doc. No. 25.)  In his Motion to Subpoena Toledo Police Report, Jefferson argued that this Report is relevant because it shows that "Ervin was the violent person and . . . Jefferson was the victim who was physically impaired and needed help from her."  (*Id.*)

allegations." *Williams,* 380 F.3d at 974.  Instead, a habeas petitioner must show good cause for discovery through "specific allegations of fact." *Id.*

The Court finds that the Magistrate Judge's denial of Jefferson's Motions for Discovery and for the Toledo Police Report (Doc. Nos. 17, 25) was not clearly erroneous or contrary to law. Jefferson has not sufficiently demonstrated that the discovery he seeks is material, or otherwise set forth specific allegations showing that, if the facts are fully developed, he may be entitled to relief. Moreover, to the extent Jefferson is arguing that the requested discovery is relevant to his sufficiency of the evidence claim relating to his felonious assault conviction, this claim was considered on the merits by the state courts.   As the Magistrate Judge correctly noted, the United States Supreme Court has held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 182-183 (2011).  To the extent any of the evidence Jefferson now seeks was not before the state courts, it could not be considered in these habeas proceedings with respect to his sufficiency of the evidence claim.

Accordingly, the Court finds that the Magistrate Judge's denial of Jefferson's Motions for Discovery (Doc. Nos. 17, 25) is neither clearly erroneous or contrary to law.  Jefferson's Objection is without merit and overruled.

### 3.      Motions to Expand the Record (Doc. Nos. 24, 31)

Jefferson objects generally to the Magistrate Judge's denial of his Motions to Expand the Record.  (Doc. No. 35 at pp. 3-4.)  In particular, he directs this Court's attention to the documents attached to his April 4, 2019 Motion to Expand (Doc. No. 31), which appear to consist of a letter from his counsel (Daniel Arnold) to Jefferson, records from the Toledo Municipal court, an incident detail report dated February 3, 2016, a record of property search, and what appear to be attorney

14

notes. (Doc. No. 31-1.)  It is not entirely clear but Jefferson appears to argue that these documents are relevant to Ms. Ervin's credibility.

Under the Rules Governing Section 2254 Cases, a respondent has discretion to attach to his Answer parts of the record that he considers relevant.  *See* Rule 5(c) of the Rules Governing Section 2254 Cases.  Pursuant to Habeas Rule 5, a district court may thereafter "order that the respondent furnish other parts of the existing transcripts or that parts of untranscribed recordings be transcribed or furnished." *Id.*  Moreover, Habeas Rule 7 provides that "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." *See* Rule 7(a) of the Rules Governing § 2254 Cases.  Habeas Rule 7 "permits federal habeas corpus courts to direct the parties to supplement the state court record with materials relevant to the Court's resolution of the petition."  *Lynch v. Hudson*, 2010 WL 2076925 at * 2 (S.D. Ohio May 24, 2010). Interpreting these Rules, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory...and is left to the discretion of the trial judge."  *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).  *See also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008); *Bates v. Warden, Chillicothe Correctional Institution*, 2015 WL 5299454 at * 5 (S.D. Ohio Sept. 10, 2015).

As an initial matter, the Court notes that Jefferson does not articulate any specific objection to the Magistrate Judge's denial of his November 26, 2018 Motion to Expand (Doc. No. 24.)  The Magistrate Judge denied that Motion as moot on the grounds that the records Jefferson sought to include were subsequently included in the state court record filed by the State with the Return of Writ. (Doc. No. 34 at p. 5.)  Jefferson does not object to or otherwise challenge this finding.  Accordingly, the Court agrees with and adopts the Magistrate Judge's denial of Jefferson's November 2018 Motion to Expand.

With respect to Jefferson's April 4, 2019 Motion to Expand, the Magistrate Judge denied the Motion on the grounds that "Jefferson has failed to demonstrate that the records he seeks to introduce could establish a basis upon which federal habeas relief is warranted." (Doc. No. 34 at p. 6.) This Court agrees. In his Objection, Jefferson does not sufficiently explain how the evidence attached to his Motion is relevant to resolution of the instant Petition. Nor does he otherwise articulate any specific basis for the Court to conclude that the Magistrate Judge's decision to deny his April 2019 Motion to Expand was either clearly erroneous or contrary to law.

Accordingly, the Court finds that the Magistrate Judge's denial of Jefferson's Motions to Expand the Record (Doc. Nos. 24, 31) is neither clearly erroneous or contrary to law. Jefferson's Objection is without merit and overruled.

### B. Dispositive Matters

Jefferson also objects to the Magistrate Judge's recommendations that the Court (1) dismiss Grounds One and Three of the Petition as procedurally defaulted; (2) dismiss the portion of Ground Two relating to Jefferson's weapons under disability conviction as procedurally defaulted; (3) deny the portion of Ground Two relating to his felonious assault conviction on the merits; and (4) dismiss Ground Four on the basis of *Stone v. Powell*, 428 U.S. 465 (1976).

As these objections relate to dispositive matters, the Court will conduct a *de novo* review.

### 1. Ground One—Ineffective Assistance of Trial Counsel

In Ground One, Jefferson asserts that his trial counsel was constitutionally ineffective because he (1) improperly advised Jefferson to reject a plea deal and proceed to trial; (2) did not follow procedures for renewing a Criminal Rule 29(c) motion; (3) did not raise as an issue the fact that Jefferson told his trial counsel that he realized he knew one of the jurors; (4) did not properly cross-

16

examine the victim, Jeanette Ervin, and did not make sure that Ms. Ervin was advised of her Fifth Amendment rights; and (5) overlooked relevant evidentiary matters, including the need to obtain forensic testing, the need to subpoena an eye witness and present testimony from certain other witnesses sent home from the trial, the need to introduce the DVD of Detective Wise's interrogation, and the need to subpoena medical records.  (Doc. No. 22.)

The Magistrate Judge recommends that this Ground be dismissed as procedurally defaulted because, even though Jefferson could have raised the above alleged instances of ineffective assistance of trial counsel on direct appeal, he failed to do so.  (Doc. No. 34 at p. 23.)  The Magistrate Judge further found that, to the extent that presenting these claims in his first post-conviction proceeding was the proper avenue for seeking review of those claims, the state trial court denied Jefferson's post-conviction petition as untimely and Jefferson failed to appeal that ruling.  (*Id.*)  The Magistrate Judge concluded that "with no state court remedies still available to him, Jefferson has defaulted the claims." (*Id.* at p. 24.)

The Magistrate Judge then found that Jefferson had failed to show cause or prejudice to excuse the default.  (*Id.*)  Specifically, the Magistrate Judge found that Jefferson could not rely on ineffective assistance of appellate counsel to excuse the default of Ground One because Jefferson's ineffective assistance of appellate counsel claims are themselves defaulted.  (*Id.* at p. 25.)  In this regard, the Magistrate Judge noted that the state appellate court denied Jefferson's 26(B) Application as untimely; Jefferson failed to appeal that ruling to the Supreme Court of Ohio; and there was no procedural avenue for him to now exhaust the claims raised in his Application.  (*Id.*)

The Magistrate Judge then found that Jefferson could not demonstrate cause or prejudice to excuse the default of his ineffective assistance of *appellate* counsel claims.  (*Id.* at p. 26.)  The

17

Magistrate Judge found that, to the extent Jefferson was seeking to excuse his untimely 26(B) Application on the grounds of lack of legal training and/or mental or physical issues caused by his epilepsy, Jefferson had failed to show that either of these issues prevented him from timely filing his 26(B) Application or appealing the denial of his 26(B) Application to the Supreme Court of Ohio. (*Id*.)

The Magistrate Judge went on to find that "to the extent Jefferson claims that his failure to appeal the denial of his post-conviction petition (that included claims of ineffective assistance of trial counsel (Doc. 28-1, p. 126)) should be excused because his post-conviction counsel, who was appointed by the trial court, belatedly notified him of the trial court's denial of his post-conviction petition due to the trial court having an incorrect office address for his post-conviction counsel (Doc. 28-1, pp. 156-158), his claim should fail." (*Id*. at p. 27.)  In this regard, the Magistrate Judge noted that the December 2017 Order denying his first post-conviction petition was also sent directly to Jefferson, as was a copy of the docket.  (*Id*.)

Lastly, the Magistrate Judge found that Jefferson's procedural default of Ground One could not be excused on the basis of actual innocence because Jefferson has not presented any evidence showing factual innocence.  (*Id*. at p. 28.)

In his Objection, Jefferson argues that "[a]ll three counsel's performance prejudiced Jefferson's outcome in these proceedings."  (Doc. No. 35 at p. 6.)  He claims that his trial counsel violated the Ohio Rules of Professional Conduct when he advised Jefferson to reject the State's three-year plea deal.  (*Id.*)  Jefferson then asserts as follows:

> Jefferson's appeal counsel failed to challenge ineffective assistance of trial on direct appeal but the Sixth District Court of Appeals denied it as untimely.  North Central Correctional Complex's mailroom failed to timely mail . . . Jefferson's 26(B) Petition due to lack of funds in his account.  *Dorn v. Lafler*, 601 F.3d 439, 444-445 (6th Cir.

18

2010). Lucas County Clerk of Court mailed this judgment to Jefferson's post-conviction counsel not him. *Cambell v. U.S.*, 686 F.3d 353, 360 (6th Cir. 2012). Jefferson have learned more about law and legal procedurals now then he knew during his direct appeal and post-conviction so that [is] why Jefferson is able [to] file motions and challenge his constitutional rights. There is no procedural bar because Jefferson failed to raise Ineffective Assistance of Counsel on direct appeal or to the appeal court when Jefferson is actually innocent.

(*Id*. at p. 7-8.)

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id*.

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

For the following reasons, the Court finds that Jefferson's first habeas ground for relief is procedurally defaulted. In this ground, Jefferson raises numerous claims of alleged ineffective assistance of trial counsel. To the extent one or more of these claims rely on evidence in the trial record, Jefferson defaulted these claims because he failed to properly raise them on direct appeal. As noted above, Jefferson did not raise any ineffective assistance of trial counsel claims in his direct appeal to the state appellate court. While he did assert an ineffective assistance of trial counsel claim in the next step of his direct appeal to the Supreme Court of Ohio, this does not save his claims from being barred as procedurally defaulted. *See e.g., Smith v. Warden*, 2010 WL 3075166 at * 14 (S.D. Ohio April 14, 2010) (finding claims defaulted where, although petitioner raised claims to Ohio Supreme Court on direct appeal, he failed to first present them to the state appellate court);[7] *Tharp v.*

---

[7] The court in *Smith, supra* succinctly summarized the law on this issue as follows: "Although petitioner raised these claims in his appeal to the Ohio Supreme Court, that action in itself did not preserve the claims for habeas review. 'The Ohio Supreme Court has stated that it will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals. *State v. Phillips*, 27 Ohio St.2d 294, 272 N.E.2d 347, 352 (1971); *State v. Lynn*, [5 Ohio St.2d 106, 214 N.E.2d 226, 229 (1966).]" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.1985) (quoting *Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983)). Since petitioner failed to raise the claims set forth in Grounds Two, Three, Four, Five, Eight, and Nine in the Ohio Court of Appeals, these claims were not preserved for appeal to the Ohio Supreme Court. *Leroy*, 757 F.2d at 99. District courts within the Sixth

*Eppinger*, 2019 WL 7494383 at * 7 (N.D. Ohio Dec. 9, 2019) (same).  Because Jefferson has not argued or shown that state law would now permit him to raise these claims, the Court finds that they are defaulted.  *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

In his Objection, Jefferson appears to argue that his default of these on-the-record ineffective assistance of trial counsel claims should be excused on the basis of ineffective assistance of appellate counsel.  The Court rejects this argument.  While ineffective assistance of appellate counsel may serve as "cause" to excuse a procedural default, it may only do so if the ineffective assistance of appellate counsel claim is not itself defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000); *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012).  Because the state appellate court denied Jefferson's 26(B) Application on procedural grounds and Jefferson failed to appeal that denial, the ineffective assistance of appellate counsel claims raised therein are themselves procedurally defaulted and may not serve as "cause" to excuse the default of Jefferson's on-the-record ineffective assistance of trial counsel claims.

Jefferson then appears to argue that the default of his ineffective assistance of appellate counsel claims should be excused because "North Central Correctional Complex's mailroom failed to timely mail . . . Jefferson's 26(B) Petition due to lack of funds in his account."  (Doc. No. 35 at p. 7.)  The Court rejects this argument.  Even assuming *arguendo* that the alleged failure of the prison to mail Jefferson's 26(B) Application could serve as cause to excuse this default, Jefferson offers no explanation for his further failure to timely appeal the state appellate court's denial of that

---

Circuit 'have consistently found Ohio's procedural rule requiring claims to be presented in the lower appellate court prior to being presented to the Ohio Supreme Court to be an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.' *Shank v. Mitchell*, No. 2:00–cv–17, 2008 WL 4449567, at *43 (S.D. Ohio Sept.30, 2008) (Marbley, J.) (citations omitted). Thus, Grounds Two, Three, Four, Five, Eight, and Nine of the petition are procedurally defaulted." *Smith*, 2010 WL 3075166 at * 14.

Application.  Because Jefferson has not demonstrated cause to excuse the default of his ineffective assistance of appellate counsel claims occasioned by his failure to appeal the state appellate court's ruling, he cannot use ineffective assistance of appellate counsel to excuse the default of his on-the-record ineffective assistance of trial counsel claims.

Several of Jefferson's ineffective assistance of trial counsel claims set forth in Ground One could be construed as relying on evidence outside the trial record.  To the extent these claims could have been properly raised in a post-conviction petition, the Court finds they are also procedurally defaulted.  As detailed above, Jefferson raised certain ineffective assistance of trial counsel claims in his first post-conviction, filed October 4, 2017.  (Doc. No. 28-1, Exh. 17.)  Specifically, Jefferson raised the following ineffective assistance of trial counsel claims:

> Mr. Daniel Arnold refused [to] summon Mr. Jefferson's eye witness (Ward v. Dretke) LaShanna Haney and he sent 3 of Mr. Jefferson's witness[es] in court on the first of trial [sic].  Also, Mr. Arnold failed [to] summon Medical and Ballistic experts.

(*Id*. at PageID#1084) The three witnesses are identified in the Post-Conviction Petition as "eyewitnesses" Tyra Clemmons, Sierra Dotson, and Vaughan Hoblet, CNP.  (*Id*.)  No affidavits from either Ms. Haney, Ms. Clemmons, Ms. Dotson, or Nurse Hoblet are attached to Jefferson's Post-Conviction Petition.

The state trial court appointed counsel, Autumn Adams, to assist Jefferson with his Petition.  Ms. Adams subsequently filed a Reply Brief in support of Jefferson's Petition.  (Doc. No. 28-1, Exhs. 20, 21.)  That Reply did not contain any further information regarding what Ms. Haney, Ms. Clemmons, Ms. Dotson, or Nurse Hoblet would have testified to, nor did it attach any affidavits or other evidence from or relating to these individuals.  (*Id*.)

22

The state trial court denied Jefferson's Petition on December 20, 2017.  (Doc. No. 28-1, Exh. 22.)  Jefferson did not appeal the state court's ruling and may no longer do so, as Ohio does not permit delayed appeals in post-conviction proceedings.[8]  *See Wright v. Lazaroff*, 643 F. Supp.2d 971, 987 (S.D. Ohio 2009) ("The Supreme Court of Ohio has specifically held that "a delayed appeal pursuant to App. R. 5(A) is not available in the appeal of a post-conviction relief determination ...") (citing *State v. Nichols*, 463 N.E.2d 375, 378 (1984)); *Carley v. Hudson*, 563 F. Supp.2d 760, 775 (N.D. Ohio 2008) (same); *Scott v. Warden, Pickaway Correctional Inst.*, 2014 WL 29514 at * 6 (S.D. Ohio Jan. 3, 2014) (finding claim procedurally defaulted because petitioner failed to appeal the trial court's denial of his post-conviction petition and petitioner could no longer appeal because "Ohio does not permit delayed appeals in post-conviction proceedings.") *See also Nesser v. Wolfe*, 2010 WL 1141006 at *4 (6th Cir. March 25, 2010) (holding that "Ohio does not permit delayed appeals in postconviction proceedings, and this is an adequate and independent ground upon which to deny relief."). Thus, the Court finds that the outside-the-record ineffective assistance of trial counsel claims that were raised in Jefferson's first Post-Conviction Petition are procedurally defaulted.

In his Objection, Jefferson appears to assert that the default of these claims should be excused because the "Lucas County Clerk of Court mailed this judgment to Jefferson's post-conviction counsel not him." (Doc. No. 35 at p.7.)  He also appears to implicitly assert that his post-conviction counsel did not timely inform him of the denial of his petition.  (*Id.*)

Even assuming *arguendo* that Jefferson could establish cause to excuse the default of these outside-the-record ineffective assistance of trial counsel claims, these claims are nonetheless barred

---

[8]  The Magistrate Judge's R&R suggests that Jefferson could have taken steps to seek leave to file a delayed appeal from the denial of his post-conviction, citing Ohio App. R. 5.  (Doc. No. 34 at p. 27.)  This Court respectfully disagrees and does not adopt that portion of the Magistrate Judge's R&R.

because Jefferson has not demonstrated that he was prejudiced.  *See Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1076 (6th Cir. 2015) ("In order to overcome a procedural default, a habeas petitioner must demonstrate both cause for the default and actual prejudice from the alleged error of federal law.") (citing *Coleman*, 501 U.S. at 750)).  As the Sixth Circuit has explained, "[p]rejudice, for purposes of procedural default analysis, requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).  *See also Fautenberry v. Mitchell*, 515 F.3d 614, 629 (6th Cir. 2008).  Habeas petitioners cannot rely on conclusory assertions of prejudice to overcome procedural default; rather, "they must present affirmative evidence or argument as to the precise . . . prejudice produced." *Lundgren,* 440 F.3d at 764 (citing *Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005)).

The Court finds that Jefferson has failed to sufficiently demonstrate prejudice.  Jefferson has not articulated how he was prejudiced by trial counsel's failure to call Ms. Haney, Ms. Clemmons, Ms. Dotson, or Nurse Hoblet as witnesses.  Jefferson does not direct this Court's attention to any affidavits or other documentary evidence indicating the nature of the testimony he believes these witnesses would have offered.  Nor does he even describe the alleged content of any such testimony or evidence.  In light of the above, the Court finds that Jefferson has failed to demonstrate prejudice to excuse the default of the outside-the-record ineffective assistance of trial counsel claims set forth in his first Post-Conviction Petition.

To the extent Jefferson raised additional outside-the record ineffective assistance of trial counsel claims in any of his successive post-conviction petitions and/or motions, these claims are also defaulted.  As noted above, the state trial court denied Jefferson's Successive Post-Conviction

Petition and Motion to Obtain New Evidence in August 2018.  (Doc. No. 28-1, Exh 26.)  Jefferson did not appeal the trial court's ruling and cannot do so now, as Ohio does not permit delayed appeals in post-conviction proceedings.  *See e.g., Wright*, 643 F. Supp.2d at 987; *Carley*, 563 F. Supp.2d at 775; *Scott*, 2014 WL 29514 at * 6.  Moreover, Jefferson has not argued or demonstrated that there is either cause or prejudice to excuse the default of these claims.

Finally, Jefferson asserts, summarily, that the procedural default of Ground One should be excused on the basis of actual innocence.  (Doc. No. 35 at p. 8.)  A petitioner's procedural default may be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman*, 501 U.S. at 749–50.  In order to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  *See also Jones v. Bradshaw,* 489 F. Supp.2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 2012 WL 3711552 at * 7 (6th Cir. Aug. 29, 2012).  A petitioner must show that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.  *See Schlup*, 513 U.S. at 327. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."  *Id.* at 316.

Here, while Jefferson repeatedly asserts that he is innocent, he fails to support this allegation with any new, reliable evidence that was not presented at trial.  Jefferson argues generally that medical

records would prove that "his hands were not usable on or around February 3, 2016" and, therefore, he could not have shot a gun at Ms. Ervin.  (Doc. No. 35 at p. 10.)  Jefferson's conclusory allegation that his hands were "not usable" on the date of the offense, however, is not sufficient to demonstrate actual innocence.  Moreover, as the state appellate court noted, during his interrogation by Detective Wise, Jefferson expressly admitted to having shot at a possum earlier in the day on February 3, 2016.  *See State v. Jefferson*, 2017 WL 3575607 at *4.  *See also* Doc. No. 28-1, Exh. 38 at Tr. 254.  Accordingly, the Court finds that Jefferson has failed to demonstrate that the procedural default of Ground One should be excused on the basis of actual innocence.

For all the reasons set forth above, the Court finds that Jefferson's ineffective assistance of trial counsel claims set forth in Ground One of the Petition are procedurally defaulted.  The Court further finds that Jefferson has not demonstrated cause, prejudice, or actual innocence to excuse the default of these claims.[9]  Thus, Jefferson's Objection is overruled and Ground One is denied.

### 2.    Ground Two—Sufficiency of the Evidence

In Ground Two, Jefferson contends that there was insufficient evidence to convict him of felonious assault and having weapons while under disability.  (Doc. 22 at pp. 17-18.)  He argues that no actual victim was injured; there was no eye witness testimony to prove that Jefferson actually shot a gun; there was no forensic testing to prove that Jefferson shot a firearm; and there was no evidence to prove that Jefferson was the owner or lease holder of the property at 2005 Elliott Ave. where the firearms were located.  (*Id.*)

---

[9] In his Objection, Jefferson does not argue that the default of Ground One should be excused due to his mental and/or physical health problems.  Thus, the Court deems any such argument waived and does not address it herein.

In the R&R, the Magistrate Judge recommended the Court find that (1) the portion of this Ground relating to Jefferson's weapons under disability conviction should be dismissed as procedurally defaulted; and (2) the portion of this Ground relating to Jefferson's felonious assault conviction should be denied on the merits.  (Doc. No. 34 at pp. 29-35.)  Jefferson objects to both recommendations.  (Doc. No. 35 at pp. 8-10.)

### a.      Weapons Under Disability Conviction

The Magistrate Judge concluded that Jefferson's weapons under disability sufficiency of the evidence claim is procedurally defaulted because Jefferson did not raise this particular argument in his direct appeal to the state appellate court.  (Doc. No. 34 at p. 29.)  The Magistrate Judge further found that Jefferson failed to demonstrate either cause or prejudice to excuse the default.  (*Id*. at pp. 29-30.)

Jefferson does not address the issue of procedural default, cause or prejudice in his Objection. (Doc No. 35.)  Rather, he argues that there was no evidence to prove that he committed the offense of weapons under disability because "Toledo police officers and detective testified at trial that Jefferson had no weapon in his possession and there was no physical proof Jefferson fired a weapon, such as ballistics, no gun shot residue test, no fingerprints and no projectile found, no evidence to support Jefferson violated this law by committing this offense."  (*Id*. at p. 9.)

Because Jefferson did not object to the Magistrate Judge's determination that this claim is procedurally defaulted, the Court deems such argument waived.  The Court also deems waived any argument that cause or prejudice exists to excuse default of this claim.  Accordingly, and upon its own review, the Court agrees with the Magistrate Judge and adopts her recommendation that Jefferson's sufficiency of the evidence claim relating to his weapons under disability conviction is

27

procedurally defaulted and, further, that Jefferson has failed to demonstrate either cause or prejudice to excuse the default.

Liberally construed, Jefferson's Objection does appear to assert that the default of this claim should be excused on the basis of actual innocence. The Court rejects this argument. While Jefferson's Objection could be read to assert various legal theories as to why he should not have been convicted of this offense, he fails to come forward with any new, reliable evidence that he is factually innocent of the offense of weapons under a disability. Accordingly, the Court rejects Jefferson's Objection with respect to this claim.

Accordingly, the Court finds that Jefferson's sufficiency of the evidence claim relating to his weapons under disability conviction, as set forth in Ground Two of the Petition, is procedurally defaulted. The Court further finds that Jefferson has not demonstrated cause, prejudice, or actual innocence to excuse the default of this claim. Thus, Jefferson's Objection is overruled and this portion of Ground Two is denied.

### b.  Felonious Assault Conviction

In the R&R, the Magistrate recommends that the Court deny on the merits Jefferson's sufficiency of the evidence claim with respect to his felonious assault conviction. (Doc. No. 34 at pp. 31-34.) The Magistrate Judge concluded that, although there was no direct evidence that Jefferson shot a gun at Ms. Ervin, the jury heard a wealth of circumstantial evidence that Jefferson committed the offense, including Ms. Ervin's testimony and police officers' testimony regarding the recovery of several firearms inside the residence and the recovery of a shell casing lying on top of the grass next to the front porch. (*Id.*) In light of this testimony and evidence, the Magistrate Judge concluded that

the state appellate court reasonably concluded that the circumstantial evidence was sufficient to establish that Jefferson committed the offense of felonious assault.  (*Id*.)

In his Objection, Jefferson insists that there is no evidence to support his conviction for this offense.  (Doc. No. 35 at pp. 9-10.)  He maintains that Ms. Ervin's testimony is not credible and notes that she was never harmed.  (*Id*.)  Jefferson also claims that he could not have committed the offense because his hands were "not usable" and, therefore, he could not have shot a gun on the night in question.  (*Id*.)

Jefferson raised this claim in his direct appeal to the state appellate court.  (Doc. No. 28-1, Exh. 9.)  That court considered it on the merits and rejected it as follows:

> {¶ 17} Under R.C. 2903.11(A)(2), a defendant may be convicted of felonious assault for causing or attempting to cause physical harm to another by means of a deadly weapon.  "Firing a gun in a person's direction is sufficient evidence of felonious assault." *State v. Jordan,* 8th Dist. Cuyahoga No. 73364, 1998 WL 827588, *12, 1998 Ohio App. LEXIS 5571, *31 (Nov. 25, 1998).  According to appellant, the state failed to introduce sufficient evidence to establish that he fired a shot at Ervin as she was fleeing from the residence.

> {¶ 18} In denying appellant's Crim.R. 29 motion, the trial court characterized this case as a "close call."  We agree.  While the state did not introduce direct evidence as to whether appellant pointed his firearm at Ervin and pulled the trigger, we find that the circumstantial evidence was sufficient to establish that he did so.

> {¶ 19} During her testimony at trial, Ervin testified that she clearly heard a gunshot ring out from the area around the front porch as she was running out of the residence.  Prior to this point, appellant was enraged at the thought of Ervin terminating the marriage, and had already violently reacted by biting Ervin and attempting to prevent her from leaving the residence.  During the incident, Ervin observed a handgun sitting on a nearby table.  After arriving at her vehicle following the gunshot, she looked back and saw appellant reentering the residence from the front porch.

> {¶ 20} During the ensuing investigation, authorities recovered several firearms inside the residence.  One of these firearms contained ammunition that matched a .25 caliber spent shell casing that was discovered lying on top of the grass next to the front porch.  Appellant attempted to explain the spent shell casing by admitting to having shot at a

possum earlier in the day.  However, according to detective Wise, appellant's story changed several times during the interrogation.

{¶ 21} Construing the foregoing evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found, beyond a reasonable doubt, that appellant attempted to cause Ervin serious physical harm by firing a shot in her direction as she attempted to escape the residence.  Thus, the trial court properly denied appellant's Crim.R. 29 motion, and appellant's first assignment of error is not well-taken.

*State v. Jefferson*, 2017 WL 3575607 at *4.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  *See also Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000).  The role of the reviewing court in considering such a claim is limited:

A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (internal citations omitted).  Moreover, it is well established that "'attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'"  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (quoting *United States v. Adamo*, 742 F.2d 927, 935 (6th Cir.1984) *abrogated on other grounds by Buford v. United States*, 532 U.S. 59 (2001)).

Consistent with these principles, the Supreme Court has emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

30

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (per curiam). And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e ... inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.*

Upon careful review of the trial transcript, the Court finds that Jefferson's felonious assault conviction is supported by substantial evidence. The state appellate court accurately summarized the trial testimony and evidence of record. As noted by the state court, Ms. Ervin testified that, on February 3, 2016, she went to see Jefferson at a residence located on Elliott Street to tell him that she was ending their marriage. (Doc. No. 28-1, Exh. 38 at Tr. 176-178.) While she was with Jefferson, she saw a gun on the table. (*Id.*) She testified that, during the course of their conversation, Jefferson became upset, bit her face, screamed and yelled, and attempted to block her from leaving. (*Id.*) She was able to run out of the house and then clearly heard a gunshot ring out:

> I ran out that door so fast.  I was trembling. I was scared to death.  I feared for my life.  As I'm running out the door going down the steps I hear a pow.  I'm like, oh, my God, he done shot at me, am I shot? I run around to my car. I'm shaking. I'm trembling. I'm falling down to my knees. The key's dropping out of my hand.  I'm trying [to] get in my car to get away and I look through my car window to see where he was at after he shot at me.  He's standing on this porch like it's nothing.  He turn around and he walks back in the house.  And I'm waiting to see am I shot.

(*Id*. at Tr. 178.)

The State later introduced testimony from Officer Sahdala that he responded to the scene, entered the house where Jefferson and Ervin had been talking, and discovered three handguns, all of which were loaded.  (*Id*. at Tr. 226-228.)  Officer Sahdala further testified that one of these guns was a .25 caliber weapon.  (*Id*.)

Officer Watson then testified that he responded to the scene and searched the grass located near the front porch for shell casings.  (*Id*. at Tr. 234-236.)  Officer Watson testified that he found one .25 Hornady shell casing in the grass, approximately five to six feet from the front porch.  (*Id.*)  Officer Watson testified that the location of the shell casing was consistent with a shot having been fired from the front porch.  (*Id*.)  He further stated that two unspent rounds of Hornady .25 ACP ammo were found in the .25 caliber weapon recovered from the residence.  (*Id*.)

In light of the above, the Court finds that the state appellate court reasonably concluded that sufficient evidence supported the jury's findings as to each element of felonious assault.  The Court acknowledges that the evidence presented by the State was entirely circumstantial.  The Supreme Court has held, however, that "[c]ircumstantial evidence ... is intrinsically no different from testimonial evidence," and that it is sufficient as long as the jury is convinced beyond a reasonable doubt.  *See Holland v. United States*, 348 U.S. 121, 138-140 (1955).  *See also Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (stating that "we have never questioned the sufficiency of

32

circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required").

Jefferson nonetheless asserts that his conviction is not supported by sufficient evidence because Ervin's testimony is unreliable and contradictory. This argument is without merit. It is well established that the credibility of witness testimony was outside the scope of the state appellate court's consideration of Jefferson's claim of insufficient evidence. *See Martin*, 280 F.3d at 618. Rather, the state appellate court properly considered all of the evidence in the light most favorable to the State and determined there was sufficient evidence to convict him. The standard of review applied by the state appellate court coincides with the standard for sufficiency of the evidence set forth in *Jackson, supra*. Jefferson points to no federal legal precedent requiring the state appellate court, in the context of a challenge to the sufficiency of the evidence, to engage in the evidence-weighing that he requests.

Accordingly, Jefferson's Objection is without merit and overruled. Jefferson's sufficiency of the evidence claim relating to his felonious assault conviction is denied on the merits.

### 3. Ground Three—Prosecutorial Misconduct

In Ground Three, Jefferson argues that his due process rights were violated because the prosecutor improperly introduced bad character evidence at trial by using Jefferson's prior drug conviction from 2007. (Doc. 22 at pp. 19-20.) He asserts that the prosecutors violated his due process rights and the prosecutors violated the Brady rule when they failed to introduce and withheld from the jury the Detective Wise interrogation DVD from the night of February 3, 2016. (*Id*. at pp. 20-21.) Jefferson also argues that the prosecutors violated his rights because they did not introduce evidence sufficient to prove the elements of the offenses for which he was charged. (*Id*. at pp. 21-26.)

33

The Magistrate Judge recommends that this ground be dismissed as procedurally defaulted. (Doc. No. 34 at pp. 35-37.) She determined that Jefferson's claims would have been apparent from the face of the record and, therefore, he was required to raise them on direct appeal. (*Id.*) Jefferson, however, failed to do so and had not demonstrated that a state court remedy existed through which he could now exhaust these claims. (*Id.*) Lastly, the Magistrate Judge found that Jefferson could not establish either cause or prejudice for the default. (*Id.*)

In his Objection, Jefferson does not address the issues of procedural default, cause, or prejudice in his Objection. (Doc No. 35 at pp. 10-11.) Rather, he asserts generally that the State withheld Brady evidence and improperly vouched for Ms. Ervin during her testimony. (*Id.*) Jefferson also states that this claim should not be procedurally barred because he is actually innocent. (*Id.*)

Because Jefferson did not object to the Magistrate Judge's determination that this claim is procedurally defaulted, the Court deems such argument waived. The Court also deems waived any argument that cause or prejudice exists to excuse default of this claim. Accordingly, and upon its own review, the Court agrees with the Magistrate Judge and finds that Jefferson's prosecutorial misconduct claim is procedurally defaulted and, further, that Jefferson has failed to demonstrate either cause or prejudice to excuse the default.

Jefferson does argue that the default of this claim should be excused on the basis of actual innocence. The Court rejects this argument. As noted above, conclusory statements are not enough to show actual innocence. Rather, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Jefferson has failed to come forward with any new, reliable evidence that he is factually innocent.

34

Accordingly, the Court finds that Jefferson has not demonstrated that the procedural default of this claim should be excused on the basis of actual innocence.

The Court therefore finds that Jefferson's prosecutorial misconduct claim set forth in Ground Three of the Petition is procedurally defaulted.  The Court further finds that Jefferson has not demonstrated cause, prejudice, or actual innocence to excuse the default of this claim. Thus, Jefferson's Objection is overruled and Ground Three is denied.

### 4.    Ground Four—Search and Seizure

In Ground Four, Jefferson argues that the Toledo police unlawfully seized him and unlawfully searched the property at 2055 Elliott Ave.  (Doc. 22 at pp. 27-28.)

The Magistrate Judge recommends that this claim be denied pursuant to *Stone v. Powell,* 428 U.S. 465, 494 (1976).  In that case, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.*  The Sixth Circuit has explained that a Fourth Amendment claim is barred by *Stone* unless "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure...." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (quoting *Willett v. Lockhart,* 37 F.3d 1265, 1273 (8th Cir. 1994) (en banc)).  *See also Brown v. Nagy*, 2019 WL 7761722 at * 6 (6th Cir. Dec. 16, 2019).

Here, the Magistrate Judge found that the State of Ohio has a mechanism in place for resolving Fourth Amendment claims, including the opportunity to file a motion to suppress.  (Doc. No. 34 at p. 38.)  The Magistrate Judge further found that "there is no indication that Jefferson's presentation of

his Fourth Amendment claim was frustrated by a failure of Ohio's procedural mechanism," particularly given that he was represented by counsel and had the opportunity to file pretrial motions. (*Id*.)  In this regard, the Magistrate Judge noted that Jefferson did, in fact, file a motion to suppress statements made during his interrogation by Detective Wise, which was decided by the trial court after a hearing.  (*Id*.)  The Magistrate Judge stated that Jefferson did not raise the Fourth Amendment claims raised in the instant habeas Petition, nor did he assert them on direct appeal.  (*Id*.)

In his Objection, Jefferson does not address the applicability of *Stone v. Powell, supra*, nor does he otherwise assert that his ability to present his Fourth Amendment claims was frustrated as a result of the State's process for presentation of such claims.  In addition, Jefferson does not argue that he, in particular, was foreclosed from raising the instant Fourth Amendment issues in the state trial court.

Accordingly, the Court agrees with the Magistrate Judge that Jefferson's Fourth Amendment habeas claim is barred by *Stone v. Powell, supra*.  Jefferson's Objection is overruled and Ground Four of the instant Petition is denied.

Therefore, and for all the reasons set forth above, Jefferson's Objections are overruled. The Magistrate Judge's R&R (Doc. No. 34) is ADOPTED as set forth herein, and the Petition is DISMISSED.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

## IV.    Motion for Emergency Release (Doc. No. 36)

On April 20, 2020, Jefferson filed a *pro se* Motion for Emergency Release due to the COVID-19 pandemic.  (Doc. No. 36.)  Therein, Jefferson states that he is at high risk due to his epilepsy and

bronchitis.[10]  (*Id.*)  He indicates that he fears for his life and asserts that forcing him to stay in custody under the present circumstances constitutes cruel and unusual punishment in violation of the Eighth Amendment.  (*Id.*)  Jefferson also states that, on April 10, 2020, he filed a "Motion for Judicial Release COVID-19 *pro se* package" in the state trial court.[11]  (*Id.*)

Respondent filed a Brief in Opposition on April 22, 2020.  (Doc. No. 37.)  Therein, Respondent argues that Jefferson's Motion should be denied because it essentially challenges the conditions of his confinement, which is not a cognizable claim in federal habeas proceedings under § 2254.  (*Id.*)  Respondent further asserts that Jefferson has not demonstrated that he is entitled to release on bond because he has failed to establish likelihood of success on the merits and/or the presence of exigent circumstances.  (*Id.*)  Finally, Respondent argues that Jefferson's Motion should be denied because he has not shown that prison authorities are unable or unwilling to address the issue of coronavirus within prisons.  (*Id.*)

As set forth at length above, the Court has exhaustively reviewed Jefferson's habeas Petition and dismissed each of his four grounds for relief.  The Court has also certified, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability.  Thus, having completed its review and dismissed the Petition, the Court is doubtful that it has the jurisdiction to grant Jefferson's Motion at this time.

---

[10] Attached to Jefferson's Motion is a purported letter dated April 9, 2019 from the Warden of North Central Correctional (where Jefferson is currently housed) indicating that an inmate had tested positive for COVID-19.  (Doc. No. 36-1.)

[11] According to the state court docket, that motion was docketed by the trial court on April 21, 2020 and remains pending as of the date of this decision.

Even assuming it retained such authority, the Court finds that Jefferson has not demonstrated that he is entitled to release. Construing Jefferson's Motion liberally, it appears that Jefferson is requesting that he be released on bond. "Release of a state prisoner pending consideration of the habeas corpus petition is reserved for the extraordinary case." *Greenup v. Snyder*, 57 Fed. Appx. 620, 621 (6th Cir. 2003) (citing *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993) ("Since a habeas petitioner is appealing a presumptively valid state conviction, both principles of comity and common sense dictate that it will indeed be the very unusual case where a habeas petitioner is admitted to bail prior to a decision on the merits in the habeas case.")). To receive bond pending a decision on the merits of a habeas corpus petition, a petitioner must show (1) a substantial claim of law based on the facts, and (2) exceptional circumstances justifying special treatment in the interest of justice. *See Lee*, 989 F.2d at 871 (quoting *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir.1990)). *See also Aronson v. May*, 85 S.Ct. 3, 5 (1964); *Nash v. Eberlin*, 437 F.3d 519, 526, n. 10 (6th Cir.2006). "There will be few occasions where a habeas petitioner meets this standard." *Dipofi v. Eichenlaub*, 2008 WL 2745143 at * 4 (E.D. Mich. July 14, 2008). *See also Dotson*, 900 F.2d at 79; *Smith v. Bergh*, 2018 WL 1399321 at * 3 (E.D. Mich. March 19, 2018).

For the reasons explained in the Court's analysis of Jefferson's Petition, the Court finds that Jefferson has not shown a substantial claim of law based on the facts. Moreover, although the Court is very aware of the serious threat to public health posed by COVID-19, Jefferson has not demonstrated that his particular circumstances constitute "exceptional circumstances justifying special treatment in the interests of justice." Although Jefferson emphasizes that he suffers from bronchitis and epilepsy, the Court finds that these conditions are not so unusual such that they would warrant the extraordinary measure of granting release.

Accordingly, and for all the reasons set forth above, Jefferson's Motion for Emergency Release (Doc. No. 36) is DENIED.[12]

## V.  Conclusion

For the foregoing reasons, Jefferson's Objections are overruled. The Magistrate Judge's Report & Recommendation (Doc. No. 34) is ADOPTED as set forth herein, and the Petition is DISMISSED.  In addition, Jefferson's Motion for Emergency Release (Doc. No. 36) is DENIED.

Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**


                                                           _s/Pamela A. Barker_____
                                                           PAMELA A. BARKER
Date:  April 27, 2020                                      U. S. DISTRICT JUDGE

---

[12]  To the extent Jefferson's Motion could be construed as a request to amend his Petition to raise a claim of cruel and unusual punishment under the Eighth Amendment, this request is denied.  The instant proceedings are far too advanced to allow amendment.  Moreover, the Court agrees with Respondent that Petitioner's motion challenges, in essence, the conditions of his confinement. Such claims are not cognizable in habeas cases. *See Hodges v. Bell*, 170 Fed. Appx 389, 393 (6th Cir. 2006) ("a habeas corpus proceeding does not extend to the conditions of confinement"). *See also Nelson v. Campbell,* 541 U.S. 637, 643 (2004) (finding that, generally, a federal court's authority in a habeas proceeding under § 2254 extends only to determining the legality of a petitioner's state-court conviction and sentence, and not to addressing the conditions of his confinement.)